MARY VAN VACTOR, a Minor, by William Van Vactor, her Father and Next Friend, *et al.*, Plaintiffs-Appellees, *v.* BLUE CROSS ASSOCIATION *et al.*, Defendants-Appellants.

First District (Third Division)   No. 62812

Opinion filed June 22, 1977.

710

Charles T. Martin and Stephen J. Landes, both of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellants.

Bernard E. Epton and Russell S. Barone, both of Epton & Druth, Ltd., of Chicago, for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Plaintiffs, Mary Van Vactor, a minor daughter of a Federal employee, and the American Society of Oral Surgeons as assignee of Alma Smith, wife of a Federal employee, brought a class action on behalf of all subscribers to the Government-Wide Service Benefit Plan whose claims for oral surgical hospitalization benefits had been denied, against the insurer, defendant Blue Cross Association, seeking a declaratory judgment interpreting the Federal Employee Health Benefits contract and brochure.

Defendant appeals from the granting of summary judgment in favor of plaintiffs. The judgment grants declaratory class action relief requiring the defendant insurer to pay approximately 3,590 policyholders who had been denied benefits on oral surgical hospitalization claims.

The brochure and the contract provide, in substance, that the insurer will pay the hospital bill incident to the inpatient removal of impacted teeth where the hospitalization was medically necessary. The court construed the insurance contract to the effect that the insurer did not have authority to review the judgment of the treating physician as to the medical necessity of a hospitalization with the consequence that the insurer was required to pay the claims. At issue in the case at bar is the impact of the requirement of medical necessity and whose judgment determines whether or not that requirement has been met. Defendant questions whether the court properly construed the insurance contract and the brochure issued to policyholders pursuant to the contract and Federal statute (5 U.S.C. §8907 (1970)). Defendant also questions whether the proof and pleadings support the judgment and whether the suit was properly maintained as a class action.

In 1960, the U.S. Civil Service Commission entered into a contract with Blue Cross Association and the National Association of Blue Shield Plans pursuant to a Federal statute (5 U.S.C. §8903 (1970)) enabling the

Commission to obtain group health insurance for Federal employees. Since all doctors' bills involved were paid, the National Association of Blue Shield Plans was not joined as a defendant. The master contract is a "service benefit plan" under which the insurer provides health services directly to the insured by reimbursing the hospital as opposed to indemnifying the insured for the cost of those services. This is accomplished by separate agreements with various hospitals and doctors to render services. Such hospitals are defined as member hospitals in the contract, and an insured merely presents his identification card to the hospital to receive benefits for covered services.

The statute requires that all civil service employees who have not yet enrolled in any of the alternative plans be provided with sufficient information to enable them to make an informed choice. The Civil Service Commission, after consultation with the carrier, provides this information. Once an employee enrolls in a plan, the statute requires that he be given a document summarizing the services, benefits, limitations, exclusions and procedures for obtaining benefits, and the principle provisions of the plan. The statute does not state who is to issue this brochure. The master contract states that the "corporations [Blue Cross and Blue Shield] shall issue or cause to be issued through the [U.S. Civil Service] Commission" an appropriate document summarizing benefits available and the procedures for obtaining benefits. Although it is unclear from the record who prepared the particular brochures at issue in this case, the evidence showed that in general the brochures were the result of a joint effort undertaken by the Civil Service Commission and Blue Cross.

The plaintiffs in the instant case filed a class action suit for a declaratory judgment respecting the proper interpretation of both the master contract and the brochure. Due to an amendment of the master contract, the judgment order is confined to claims brought during 1971 and 1972.

The master contract introduces a list of covered hospital services as follows:

> "The following are covered hospital services when furnished and billed for as a regular hospital service *when necessary to and rendered in conjunction with* obstetrical care or the medical or surgical diagnosis or treatment of an illness or injury * * *." (Emphasis added.)

The brochure which is provided to all employees who have enrolled in this plan states under the section on "EXCLUSIONS" that:

> "Basic Benefits, Maternity Benefits, and Supplemental Benefits will NOT be provided for charges incurred for: Services and supplies—
> * * *
>
> Not *medically necessary* for the diagnosis or treatment of an

illness, injury, or bodily malfunction * * *." (Emphasis added.)

The contract provides that admission to a hospital under the medical supervision of a doctor is a precondition to making a claim for hospital benefits:

"Benefits, * * * shall be available only to a subscriber admitted to a hospital on the recommendation, and while under the active medical supervision, of a duly licensed physician who is a member of the staff of, or acceptable to, the hospital selected, and shall terminate when the medical needs of the subscriber no longer require inpatient hospital care."

A dentist is defined as a "physician" for purposes of oral surgical and other dental work covered by the contract.

The provision of the judgment which is in dispute is paragraph 8 which provides:

"Under, and pursuant to the terms and provisions of said contract, determination of whether and to what extent hospital services rendered to a subscriber to said contract are medically necessary, is vested solely and exclusively in the judgment and discretion of the treating physician upon whose recommendation the patient was duly admitted to the hospital, and under whose supervision such services are rendered."

Article III of the contract, entitled "INFORMATION AND CLAIMS," is cited by defendant Blue Cross as relevant to the question of the insurer's authority to determine whether each particular hospitalization was medically necessary or whether, as held in the judgment order, the treating physician has final, exclusive and unreviewable authority to decide the question. Article III, paragraph (j) provides that the insurer may request a subscriber to submit to a physical examination to determine whether the claim submitted by the subscriber involved services and supplies necessary for the diagnosis and treatment of an illness or injury, and allows the insurer to withhold payment of benefits pending completion of the examination, which is at the expense of Blue Cross. In addition to this provision for a physical examination of a claimant, Article XII, "INFORMATION AND RECORDS," provides that the insurer reserves the right to obtain information and records relating to the treatment of a subscriber:

"In consideration of waiving physical examinations of a subscriber and as a condition precedent to the provision of benefits hereunder, the corporations and participating Plans shall be entitled to receive, to such extent as may be lawful, from persons and organizations providing services or supplies to the subscriber for which benefits are provided hereunder, such information and records relating to attendance or examination of, or treatment

rendered or supplies furnished to, a subscriber as may be required in the administration of such benefits * * *."

Defendant contends that the proper interpretation of the contract and brochure is that the insurer has the right to examine the facts of each claim for hospital benefits, to allow the claim if the hospitalization was medically necessary and to deny the claim if it determines that the hospitalization was not medically necessary. It points out that the "practical construction" of the contract has been that the 140 local plans review claims, passing on the question of medical necessity. If a local plan denies a claim, the next step is review by the National Office in Washington, D.C., where medical data is assembled by a staff of registered nurses who generally submit the data to an outside physician for his opinion. The Civil Service Commission can then review that decision. Defendant bases its authority to review the question of medical necessity on articles III(j) and XII of the master contract. It points to the following paragraph of the brochure as evidence of the authority of its local plans to deny claims:

"You may ask the Carrier to reconsider any claim (or portion of a claim) for which you believe benefits, as set forth in this brochure, have been denied. If you disagree with the final decision of the Carrier, you may ask for an impartial review by writing full details about the denied claim to the Bureau of Retirement, Insurance, and Occupational Health, U.S. Civil Service Commission, Washington, D.C. 20415."

This provision of the brochure, according to defendant, is "plain notice" to subscribers that the insurer has authority to decide on a case by case basis whether a hospitalization was medically necessary. Since the plan at issue here is a "service benefit plan" through which medical services are provided directly to the insured, Blue Cross is claiming the right in effect to retract benefits after they have been provided, and in this case, in respect to services expressly covered: the inpatient removal of impacted teeth where the hospitalization was medically necessary. Plaintiffs argue that since nowhere does either the master contract or the brochure provide that a judgment on medical necessity for such inpatient hospitalization is required to be made by anyone other than the duly licensed treating physician as a condition to payment of benefits, there is no justification for the denial of benefits *solely* on the ground that the insurer disagrees with the honest judgment of the treating physician. (There was no allegation that fraud, duress, or bad faith of either the doctor or the patient was involved in any of the claims denied.) Plaintiffs state that the brochure issued to the insured does not explain that Blue Cross intends to review the physician's judgment, and the master contract at best is conflicting and ambiguous.

The brochure is the main source of information for policyholders. The 65-page master contract is seldom, if ever, seen by the insured. The master contract can be amended continually, so long as a new brochure is issued advising policyholders of material changes. The language in the brochure relied on by Blue Cross to justify its right to deny benefits because it unilaterally, after the fact, disagrees with the honest judgment of the treating physician is contained in the section on exclusions. In the midst of two pages of exclusions in the middle of the 20 page document, the brochure sets forth an exclusion from coverage for services and supplies: "[n]ot *medically necessary* for the diagnosis or treatment of an illness, injury or bodily malfunction * * *." The other exclusions refer to specific identified services or kinds of services such as those for cosmetic purposes, or for personal comfort such as television or telephone service. In the context of the brochure provided to policyholders as an explanation of the benefits and exclusions under their policy, it is unclear how that exclusion puts the insured on notice that, although he must rely on the recommendation of his doctor to be admitted to the hospital and must remain under his active supervision in order to be entitled to coverage under the plan, he cannot rely on that judgment as far as his insurance coverage is concerned. The insurer can "second-guess" the treating physician's good faith judgment as to the medical necessity of health services rendered and refuse payment, *after* the insured has, in reliance on his doctor's judgment, already received those services. Moreover, in the case at bar, the services at issue, if medically necessary, are expressly covered by the plan. However, there is no mechanism by which a patient can ascertain in advance whether or not a specific hospitalization or treatment will be considered "medically necessary."

■■ It is axiomatic that "[a]mbiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured." (*Bell v. Continental Assurance Co.* (1970), 123 Ill. App. 2d 274, 278, 260 N.E.2d 114.) The term "medically necessary" is subject to various interpretations, including both that offered by defendant, requiring professional medical judgment, and that argued by plaintiffs, that a claim be honest and free of fraud or bad faith in that to a layman's knowledge the services rendered were necessary for the treatment or cure of illness. The meaning of the phrase is especially unclear as applied to oral surgical hospitalizations. Defendant, in directives to its local plans, found it necessary to advise them of two specific criteria to be used in determining the medical necessity of hospitalization for the removal of impacted teeth: (1) a complex surgical procedure; (2) a nondental organic impairment which would endanger the health of the patient if the procedure had not been done in a hospital. Since such ambiguities must

be construed so that the insured "will not be deprived of the benefit of insurance for which he has paid, except where the terms of the policy *clearly, definitely and explicitly require it*" (emphasis added) (*Schmidt v. Equitable Life Assurance Society* (1941), 376 Ill. 183, 190-91, 33 N.E.2d 485), we do not find that the trial court erred in finding that there were no genuine issues of material fact. There was sufficient evidence to warrant its conclusion that the insured was justified in relying on the good faith judgment of his treating physician as to the medical necessity of services prescribed, and that the defendant could not deny benefits *solely* because it disagreed with that judgment.

The brochure prefaces the section on "BASIC HOSPITAL BENEFITS" with the restriction that such benefits are subject to "definitions, limitations, and exclusions *in this brochure.*" (Emphasis added.) Yet articles III(j) and XII relied on by defendant as the basis for its authority to deny such benefits do not appear anywhere in the brochure but are found in the 65-page master contract. Article III(j) provides for physical examination of the insured by a physician to be chosen by the insured from a panel of three doctors selected by Blue Cross "to determine whether benefits for which [a claimant] has applied are for services and supplies necessary for the diagnosis or treatment of an illness or injury" and benefits may be withheld pending completion of the examination. Article XII provides that in lieu of a physical examination and "as a condition precedent to the provision of benefits hereunder" the insurer has the right to obtain information and records of treatment. These two provisions found in separate sections of the 65-page master contract, in conjunction with the references to medical necessity, are the basis of defendant's argument. If these provisions are construed as defendant would have us do, they would represent a vast, additional exclusionary condition to coverage, making their omission from the brochure inexcusable. Such an enormous power to deny benefits is not adequately expressed in the brochure's reference to medical necessity. Significant policy exclusions contained in a master contract but omitted from the brochure distributed to policyholders should not be enforced. *Lecker v. General American Life Insurance Co.* (1974), 55 Hawaii 624, 632, 525 P.2d 1114, 1119.

The statute requires the issuance of an "appropriate document" to summarize the essential features of the coverage provided, including "maximums, limitations, and exclusions." (5 U.S.C. §8907 (1970).) That document, the brochure, apparently issued by the U.S. Civil Service Commission and Blue Cross, nowhere explains to the insured that anyone other than his treating physician will make a determination as to the medical necessity of treatment or hospitalization which his doctor prescribes. The only way an insured can be admitted to a hospital is on

the recommendation of a physician; in fact, he must remain under his active supervision in order to be entitled to coverage under the policy. Defendant argues that the reference to "medical necessity" in the brochure's section on exclusions, and the paragraph referring to the permissive review to which a claimant is entitled after benefits have been denied, are "plain notice" to subscribers that they should not rely on their physicians' judgments as to the medical necessity of their treatment or hospitalization as far as insurance coverage is concerned; even in the absence of fraud or bad faith, their insurer maintains the right to question that professional judgment. Yet there is no mechanism by which the insured can ascertain in advance how such a determination will be made and whether or not he will be covered for a specific treatment or hospitalization.

Even assuming that these provisions of the master contract, omitted from the brochure, can be binding on the policyholders, it is unclear in light of the contract as a whole that these provisions do in fact vest in Blue Cross the authority to deny a claim solely on the ground that it disagrees with the judgment of the treating physician as to medical necessity. Article III(j) provides for a physical examination by a physician "to determine whether benefits for which [the claimant] has applied are for services and supplies necessary for the diagnosis or treatment of an illness or injury." While this might be construed in such a way as to justify disputing the treating doctor's good faith judgment, such questioning is to be done by another physician, and then only after an actual examination of the patient. Even this paragraph does not use the words "medical necessity." When read in conjunction with article XII providing that Blue Cross has the right to receive information and records relating to the examination or treatment of a subscriber "[i]n consideration of waiving physical examination of a subscriber and as a condition precedent to the provision of benefits hereunder," it is unclear whether the review is on the issue of the medical necessity of the treatment, or to determine whether the services rendered meet the specific conditions and exclusions set out as such in other sections of the contract. We believe that these provisions create an ambiguity which must be resolved in favor of the insured.

■■ Since ambiguous provisions or equivocal expressions whereby an insurer seeks to limit liability are to be strongly construed against the insurer and liberally in favor of the insured so that the insured will not be denied benefits for which he has paid unless the terms of the limitations are clear and explicit (*Mosby v. Mutual Life Insurance Co.* (1950), 405 Ill. 599, 607, 92 N.E.2d 103; *Schmidt v. Equitable Life Assurance Society* (1941), 376 Ill. 183, 190-91, 33 N.E.2d 485; *Grahame v. Mitchell* (1975), 28 Ill. App. 3d 334, 329 N.E.2d 17), we cannot say that the decision of the trial court that the insured was justified in relying on the good faith

judgment of his treating physician as to the medical necessity of services prescribed, and that Blue Cross could not deny benefits *solely* because it disagreed with his professional judgment was unsupported by the evidence. It is a reasonable conclusion that a layman would not think that "medical necessity" would be construed as a limitation so that his insurer, not his doctor, would pass final judgment on the necessity for his hospitalization, with the consequence that his insurance claim might be denied. The test of a motion for summary judgment lies in the entire record, pleadings, affidavits and counteraffidavits. (*Klesath v. Barber* (1972), 4 Ill. App. 3d 86, 88, 280 N.E.2d 283.) Since upon reviewing this record we have found no specific facts set forth by defendant showing the existence of a genuine issue of material fact, summary judgment was properly allowed.

■■■ Defendant Blue Cross next argues that summary judgment was erroneous because there was no evidence in the record to support the findings of fact in the judgment order. Specifically, defendant points to paragraphs 9 and 12 of the order. Paragraph 9 states:

"MARY VAN VACTOR and ALMA SMITH were duly admitted as inpatients for the aforesaid hospitalizations on the judgment of their respective treating physicians that said hospitalizations were medically necessary to accomplish the removal of the said impacted teeth."

Paragraph 12 finds that during 1971 and 1972, 3,590 subscribers were denied benefits for inpatient hospitalization services rendered for the removal of impacted teeth "upon the judgment of the treating physicians that same were necessary."

The chief contract administrator of Blue Cross, in her answers to interrogatories, stated that the 3,590 claims at issue including those of the two named plaintiffs were denied because the hospital records did not support the need of an inpatient setting for removal of impacted teeth. She later amended this to state that all the denied claims were not paid because Blue Cross had determined that they were "medically unnecessary." The complaint itself alleged that the plaintiffs had met all conditions required by the master contract in order to be entitled to benefits, having been admitted to a hospital upon the recommendation of a physician, and having remained there under his care. Defendant never filed an answer, but instead tendered payment to the two named plaintiffs which was refused, and moved to dismiss on grounds of mootness. Following denial of that motion, plaintiffs amended their complaint, seeking class action damages, and filed a petition for an injunction seeking to restrain further denials of claims pending the outcome of the case. Numerous affidavits of doctors and patients were attached to that petition declaring that benefits had been denied on claims involving

hospitalizations considered by the doctors to be necessary. Blue Cross then filed a motion for summary judgment, asserting that amendments to the brochure and master contract during the pendency of the suit made the matter moot. When plaintiffs filed a cross-motion for summary judgment, Blue Cross filed a counteraffidavit showing the total number of cases of removal of impacted teeth and the percentage of hospital inpatient removals as opposed to office removals. Defendant argued that the wide disparity among the States with respect to the number of hospital admissions for removal of impacted teeth showed that the practice of admitting patients to hospitals for this procedure was subject to abuse, and that there was a tendency to admit patients to serve the convenience of the patient or the oral surgeon. However, defendant offered nothing more than its statistics in support of this notion. Supreme Court Rule 191 (Ill. Rev. Stat. 1975, ch. 110A, par. 191(a)) states that affidavits submitted in connection with motions for summary judgment "shall not consist of conclusions but of facts admissible in evidence." We do not find sufficient factual basis for defendant's conclusory statement that patients are admitted for inpatient removal of impacted teeth to serve the convenience of the patient or oral surgeon. (See *Carruthers v. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457; *Murin v. Dluzak* (1977), 47 Ill. App. 3d 870, 365 N.E.2d 491.) The court below evaluated the pleadings and evidence before it, drawing inferences therefrom and concluding that the hospitalizations which were effectuated upon the recommendations of the treating physicians and under their supervision, were upon the judgment of those physicians that such hospitalizations were medically necessary. We believe that the affidavits, depositions, and pleadings support that conclusion and we will not upset it.

Defendant's final contention is that the case cannot proceed as a class action. Blue Cross points to paragraph 6 of the judgment order which states:

"Under and pursuant to the terms and provisions of said contract, *considerations of fraud, duress, and bad faith aside*, BLUE CROSS ASSOCIATION is obligated to provide or to arrange for the provisions of, or to directly reimburse any subscriber for the cost of hospital services rendered on an inpatient basis for covered oral surgery as described in said contract, or for the removal of impacted teeth, in each and all instances in which any such subscriber has been duly admitted to a hospital, as defined in the contract, for such purpose on this judgment of the treating doctor that said hospitalization was necessary." (Emphasis added.)

Defendant argues that since the provision regarding considerations of fraud, duress and bad faith presents questions of the individual perceptions and judgments of the physicians and patients involved in

each admission situation, the common issues of law and fact required to maintain a class action are missing. Further, defendant claims that since the contract states that benefits "shall terminate when the medical needs of the subscriber no longer require inpatient hospital care," individual proof is necessary on each claim to determine whether the entire hospital stay was "required."

■■ Illinois courts have frequently stated that the basic criterion for maintenance of a class action is a community of interest in the subject matter of the suit and in the remedy. (*Newberry Library v. Board of Education* (1944), 387 Ill. 85, 95, 55 N.E.2d 147; *Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 44, 136 N.E.2d 796; *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 537, 155 N.E.2d 595.) In the case at bar, the 3,590 claimants had a common interest in the construction of the master contract and brochure as it affected their rights to payment for oral surgical hospitalization claims. The insurer itself admitted that the claims were denied solely because the insurer determined that they were "medically unnecessary." The only evidence offered to dispute this was the counteraffidavit by a representative of Blue Cross stating her conclusions that in some cases the hospitalizations were for the convenience of the physician or the patient. However, there are no facts to support an inference of the honesty or dishonesty of either doctor or patient. As we stated previously, we find there is insufficient factual basis in the record to support such conclusions.

In the absence of any evidence to the contrary, the class has no significant distinguishing features among its members. All were subscribers to the same contract for which they paid the same premiums; all underwent covered oral surgical procedures while hospitalized as inpatients; all were duly admitted upon the recommendation of their treating physicians and remained under their supervision while hospitalized; all were denied benefits because Blue Cross disagreed with the judgment of the treating physicians as to the necessity of the hospitalization. The court construed the contract, declaring that when benefits were denied solely on the ground that in the opinion of Blue Cross such hospital services were not medically necessary, considerations of fraud, duress and bad faith aside, Blue Cross was obligated to arrange for payment of the denied claims. Under the court's interpretation of the language of the contract and the brochure, determination of whether and to what extent hospital services are medically necessary is "vested solely and exclusively in the judgment and discretion of the treating physician." The court then defined the class entitled to damages, retaining jurisdiction to determine the total number of claims denied under the contract during 1971 and 1972 for hospital services rendered for covered oral surgery for the sole reason that Blue Cross disagreed with the physician's judgment

as to medical necessity; to determine the amount of each claim and the identity of the claimants; to determine the nature and extent of notice to each of the subscribers; and to determine any further relief "just, equitable and necessary" to enforcement of the decree. Certainly if Blue Cross were to produce clear and convincing evidence of fraud, duress or bad faith in any of the 3,590 identified claims, or any of the additional subscribers found to be within the class, the court would deal appropriately with that claim. However, "the hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action." *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595.) The common issue of contract interpretation was dominant and pervasive. The court did not award damages; it merely declared the rights of the parties and defined the class entitled to relief, making the initial determination that, all other conditions of the contract having been complied with, Blue Cross was obligated to pay claims for covered oral surgical hospitalizations. On the basis of our analysis of the issues presented, the plaintiffs are entitled to the relief granted. The judgment of the trial court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.