We granted petitioner's request for writ of certiorari to the Court of Civil Appeals to review their decision on what we considered a material question of first impression in Alabama. That material question is whether the terminology "not medically necessary" which appears in the plaintiff's policy with the defendant Blue Cross-Shield of Alabama is terminology which is exclusively within the knowledge of expert witnesses (doctors) so that if such a witness is uncontradicted in his statement that it was not medically necessary for the plaintiff to be hospitalized, the case should not go to the jury. Although not treated in the Court of Civil Appeals opinion, the petitioner also argues that the terminology "domiciliary care" provided in plaintiff's policy is exclusively within the knowledge of expert witnesses (doctors) and if such a witness testifies that plaintiff was admitted solely because of lack of such care at home, the case should not be submitted to the jury. We will address both questions.
The trial court granted a directed verdict in favor of Blue Cross-Blue Shield, thereby answering these questions in the affirmative. The Court of Civil Appeals, 401 So.2d 781 reversed and remanded, answering the question it decided in the negative. We affirm.
There has been no contest of the factual statement of the Court of Civil Appeals and, therefore, we adopt its statement of facts. That court says the following incidents occurred:
 Plaintiff, having been released from a period of hospitalization only six days before, suffered a blackout and a fall. She fell across a coffee table while alone at night. The next day she went to the emergency room of the hospital where her physician found her to have recently fractured lumbar and sacral vertebrae and her pubis ramus. She was in much pain and unable to bear her weight without crutches. Her physician knew from his past attendance that plaintiff had weak bones, "osteoporosis," and a nervous problem causing blackouts. She had had previous falls and fractures. He knew or was told that she had no one to care for her at home. She did not request hospitalization. Plaintiff's physician admitted her to the hospital and prescribed specific courses of medication and treatment.
 Plaintiff suffered much pain for which she was given medication. She was confined to bed and given a regimen of physical therapy and exercise to relieve pain and strengthen her body. Her physician visited her twice each day, checking her condition and entering additional daily orders for her care and treatment. She remained in the hospital for more than two weeks and was released upon the order of her physician. She filed her claim for insurance benefits. The physician filed a claim for his services. A portion of plaintiff's claim was paid. The claim of the physician was paid. Subsequently, the physician was notified by defendant to return his payment and he did. Plaintiff, after several inquiries about payment, was notified her claim was denied because of policy exclusions.
 The physician testified that though he admitted plaintiff to the hospital and kept her there for two weeks, he did not consider such hospitalization "medically necessary." He said that she could have stayed at home if she had someone to care for her, and he admitted her because he knew, or she told him, she had no one at home to care for her.
Under the Exclusions section, plaintiff's Blue Cross-Blue Shield policy carries the following statements:
 Not medically necessary — i.e., when in the judgment of the Carrier the medical services did not require the acute hospital *Page 785 
bedpatient (overnight) setting, but could have been provided in a physician's office, the outpatient department of a hospital, or in a lesser facility without adversely affecting the patient's condition or the quality of medical care rendered. . . .
. . . .
 Domiciliary care — Provided because care in the home is not available or is unsuitable.
The Court of Civil Appeals said in Ford Life InsuranceCompany, Inc. v. Smith, 369 So.2d 808 at 809 (Ala.Civ.App. 1979):
 It is well settled in Alabama that the opinion testimony of an expert witness is not binding on the jury unless (1) such testimony concerns a subject which is exclusively within the knowledge of experts and (2) the testimony is uncontroverted.
If there ever was a phrase that would be exclusively within the knowledge of an expert, it would seem that the phrase "medically necessary" would meet the test. On closer scrutiny, however, it seems that which would appear to be obvious is not obvious. The first stumbling block we run into is the defendant's own view of what the term "not medically necessary" means. Although Blue Cross argues to us that we should take the word of Dr. Pendleton that plaintiff was hospitalized for non-medical reasons, Blue Cross is not required to accept doctors' opinions on this subject, absolutely. The policy says "not medically necessary" means "when in the judgment of theCarrier the medical services did not require the acute hospital bedpatient (overnight) setting." (Emphasis added.) In VanVactor v. Blue Cross Association, 50 Ill. App.3d 709, 8 Ill.Dec. 400, 365 N.E.2d 638 (1977), plaintiffs filed a class action suit to obtain hospital benefits where surgery was required for impacted teeth. The defendant Blue Cross-Blue Shield argued against absolute authority on the part of the dentist expert, claiming that the exclusionary provisions similar to the one here gave Blue Cross final authority to determine what was "medically necessary." The court, in that case, ruled against Blue Cross.
In addition to the vacillating position of the company insofar as the term "medically necessary" is concerned, we also considered the rather curious position of their expert Dr. Pendleton. The uncontroverted testimony of Dr. Pendleton is that he put the plaintiff Margaret Haggard in the hospital, although she did not request him to do so and kept her there for two weeks. While there, she suffered much pain and he prescribed medication and treatment. She was confined to bed and given a regimen of physical therapy and exercise to relieve pain and strengthen her body. In spite of all this, he testified that her hospitalization was "not medically necessary." This was his testimony, although it is commonly known that hospitals are not nursing homes and generally have a shortage of beds, even for sick and seriously ill people. The old truism that actions speak louder than words was never more appropriate than in a case like this. What the doctor did
speaks so loudly that it is hard to hear what he said when he talks about "medical necessity."
Finally, the phrase "medically necessary" is subject to more than one interpretation. Black's Law Dictionary (5th ed. 1979), says the word "necessary" means: "This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought." We have held that where terms of a policy are broad, ambiguous or susceptible to various meanings, they are to be construed most favorably for the insured. State Farm Fire and Casualty Company v. Erwin,393 So.2d 996 (Ala. 1981); Employers Insurance Company of Alabamav. Jeff Gin Company, 378 So.2d 693 (Ala. 1979). When we add to "medically" either the word "convenient," "useful," "appropriate," "suitable," "proper," or "conducive," the phrase ceases to be one as to which a doctor would have exclusive expertise.
Dr. Pendleton testified that he hospitalized plaintiff because the home in which she was residing was not suitable for the care *Page 786 
that she needed. In doing so, he was merely echoing a representation which had been made to him by the plaintiff. We have concluded that he, although uncontradicted, is not such an expert that his opinion about "medically necessary" would take this issue from the jury. He is less likely to know about the condition of her home care and, therefore, the meaning of this exclusionary phrase, as it relates to the facts in this case, likewise, must be submitted to the jury.
The Court of Civil Appeals must be affirmed on yet another ground. The testimony and actions of Dr. Pendleton were so inconsistent that both should have been submitted to the jury to determine which they chose to believe. The testimony of one witness may be so in conflict that it should be submitted to the jury. Martin v. Auto-Owners, 57 Ala. App. 489, 329 So.2d 547
(1976); Huff v. Vulcan Life and Accident Insurance Company,281 Ala. 615, 206 So.2d 861 (1968). In other words, we are saying that his position was not uncontradicted and meets one of the exceptions of the Ford case. Although his words were not contradicted, his actions may have contradicted his words.
In light of the above discussion, the trial court erred in directing a verdict in favor of the defendant. There was certainly a gleam, glimmer, spark or scintilla in support of the theory of plaintiff's complaint. Alabama Power Company v.White, 377 So.2d 930 (Ala. 1979). The Court of Civil Appeals was correct in its interpretation of this question of first impression and its judgment reversing and remanding the case is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.