This appeal arose out of a personal injury action brought by plaintiff, William D. Sulzby, against Jefferson County, Alabama. On the evening of June 12, 1978, Sulzby was driving his AMC Jeep vehicle on 23rd Avenue N.W., a two-lane county road in Jefferson County. It had been raining earlier in the evening. The road was extremely dark and hilly in some areas. According to the evidence, Sulzby was using the centerline as a guide. Apparently, after he crested a hill in front of the Sun Valley Church of Christ he became "lost in a sea of asphalt," and he could no longer see in which direction to go. Where the road curved to the left, he veered off the road. Sulzby then turned his vehicle to the left, saw a pole in front of him, and then cut to the left again. The Jeep overturned and Sulzby was thrown from the vehicle.
In his complaint, Sulzby alleged that Jefferson County was responsible for the design and construction of 23rd Avenue N.W. and that its negligence in designing and maintaining the road was the proximate cause of his injuries and damages. The jury returned a verdict in favor of Sulzby and awarded damages in the amount of $75,000.00. After the trial court denied Jefferson County's motion for judgment notwithstanding the verdict or in the alternative for new trial, the County appealed.
The County argues that this case presents one of first impression regarding the statewide application of the standards established by the Alabama Manual of Uniform Traffic Control Devices (AMUTCD). Jefferson County urges that "in its present posture this case stands for the proposition that juries, [and not qualified engineers], will decide the standard, i.e., DUTY of counties and cities of road design, road marking and road signing for county and city streets."
Specifically, the County raises three issues on appeal:
I.
 Whether the jury properly found that the County had notice of the defective roadway and therefore was under a duty to install curve warning signs and edge-of-pavement markings.
II.
 Whether statements made by Sulzby at trial constitute an admission of contributory negligence which would bar his recovery.
III.
 Whether the jury improperly ignored the testimony of the County's accident reconstruction expert. *Page 114 
 I.
Initially, Jefferson County contends that the trial court committed reversible error in denying its motions for directed verdict and judgment notwithstanding the verdict. The County argues that the case should not have been submitted to the jury because (1) there was insufficient evidence that the County had actual or constructive notice of a defective roadway condition and; (2) there was insufficient evidence to prove that the County was under a legal duty to install curve warning signs or edge-of-pavement markings. Claiming that because the Alabama Manual of Uniform Traffic Control Devices (AMUTCD) does not require edge-of-pavement markings or curve warning signs at the accident site, the County contends that it was under no duty, statutory or otherwise, to install such devices. We disagree.
The 1972 AMUTCD, which was in effect on the date of Sulzby's accident, provides in part:
 "This Manual provides standards and criteria for the application and use of all types of signs. In any given situation, however, and particularly in circumstances not specifically covered by this Manual, the judgment and experience of a traffic engineer must be depended upon for the proper choice and application of the guiding standards here set forth."
The manual, while providing standards for the statewide application of traffic control devices, is not intended to be a substitute for engineering judgment.
It is undisputed that governmental entities, by virtue of their exclusive authority to maintain and control the roadways; are under a common law duty to keep the streets in repair and in a reasonably safe condition for their intended use. Cf. §23-1-80, Code of Alabama 1975.
This Court has addressed the issue of a county's duty with regard to the maintenance of public roadways in Cook v. Countyof St. Clair, 384 So.2d 1 (Ala. 1980). This Court held that the plaintiffs could sue St. Clair County and Houston County and the county commissions for negligence for injuries arising as a result of defects in the public roads. This holding was based on Code 1975, § 11-1-2, which provides "Every county is a body corporate, with power to sue or be sued in any court of record."
Since the county can be sued for its negligence, and is exclusively responsible for the maintenance and control of its roadways, its standard of care is to keep its streets in a reasonably safe condition for travel, and to remedy defects in the roadway upon receipt of notice.
In the instant case, the evidence presented justified submission to the jury on the issue of whether the County had notice of a defective roadway condition and thus was under a duty to remedy the alleged defects. Although there was conflicting testimony as to whether the County had in fact breached its duty, there was evidence from which the jury could have reasonably inferred that the County had at least constructive notice of a defective condition of 23rd Avenue N.W. The testimony at trial showed that Jefferson County received an independent traffic engineering survey of this street in November 1977, just seven months prior to Sulzby's accident. The survey, as it relates to a 1.2 mile stretch of this roadway, stated:
 "Classified as an urban collector street, 23rd Avenue N.W. is oriented in an east-west direction, with the survey portion being approximately 1.2 miles in length beginning at Center Point Road and extending westward to Carson Road as illustrated on the adjacent strip map. It is a narrow roadway with limited shoulders situated on a bad, horizontal and vertical alignment. The pavement markings are worn and faded and are deficient relative to no-passing restrictions. The horizontal and vertical curvature of the roadway creates site, distance restrictions for traffic entering from all the side streets. The road is bounded by dense residential development." *Page 115 
The summary with respect to 23rd Avenue N.W. included the following statements and recommendations:
 ". . . The overall signing was poor. There were few signs warning of the existing geometric conditions. . . .
 "To reduce the threat of potential hazards and improved safety, the following measures are recommended for the overall corridor.
 "Repaint the poorly-marked pavement and put new sight distance limits on the horizontal and vertical curves. Determine a maintenance schedule to restripe the entire corridor on an annual basis.
 "Used raised pavement markings in addition to the center line reflective paint from Center Point Road to Carson Road. This action will alleviate the high accident potential on the sharp curves and vertical alignment.
 "Install the appropriate advance warning signs throughout the entire roadway in conformance with AMUTCD."
Additionally, Darryl Skipper, the county safety engineer, testified that on February 17, 1978, the center and edge lines of 23rd Avenue N.W., including the accident site, had been restriped by the County. However, the evidence indicated that no edge-of-pavement markings were visible or existent in June 1978 when Sulzby's accident occurred. The evidence also indicated that none of the other recommendations from the survey had been followed on the date of the accident, but that in subsequent years the road had been straightened and repaired to correct some of the defects.
While we agree with the County's contention that a jury cannot set the standard for a governmental entity's duty to mark the roadways, in this instance there was ample evidence by which a jury could have reasonably concluded that Jefferson County had notice of the defective roadway condition and had breached its duty to keep the roadway in a reasonably safe condition for travel.
 II.
The County's second argument on appeal is that the trial court should have directed a verdict as a matter of law due to Sulzby's in-court admission of contributory negligence.
The colloquy in issue was set out by the trial court as follows:
 "All this happened in a course of a split second. I started — I said, `that isn't the thing to do', and made a turn. I didn't know where I was.
 "Question: And you could have stopped your Jeep when you became confused; couldn't you, Mr. Sulzby?
 "Answer: No, sir. I couldn't have stopped in that sense. If I had known where I was before I got there and what I had to work with, as far as how much road surface, maybe I could have, but I didn't think that was the thing to do and I would have to say no.
 "Question: Your testimony is that you couldn't have stopped your vehicle after you became confused?
 "Answer: Well, I can say this, if I had put my brakes on, I would have stopped, but I wouldn't have known where I was or what was in front of me. It wasn't the right thing to do.
 "Question: Your testimony is, the right thing to do would have been to go on even though you were confused; isn't it, Mr. Sulzby?
 "Answer: All of this happened in a split second. I came over the hill. I didn't know where I was. I couldn't see which way to go and I had been using the line to come over with and then I was lost. I didn't know what to do."
Sulzby further testified that he did not stop his vehicle even when he saw the pole directly in front of his Jeep because he had lost contact with where he was.
We cannot agree with the County's contention that this testimony constitutes an admission of contributory negligence as a matter of law. See Elba Wood Products, Inc. v. Bracklin,356 So.2d 119 (Ala. 1978). *Page 116 
Generally a motorist whose vision is obscured is under a duty to exercise greater care than in ordinary circumstances. On the other hand, a motorist, without fault of his own, confronted with a sudden emergency, is not required to exercise the same presence of mind as would a prudent person under more deliberate circumstances. Williams v. Worthington,386 So.2d 408 (Ala. 1980); Pittman v. Calhoun, 231 Ala. 460, 165 So. 391
(1935). A motorist's duty in any given case is dependent upon the circumstances.
We find that the evidence in this case was sufficient to create a jury question as to whether, considering the circumstances, Sulzby's failure to stop or slow down constituted contributory negligence. The trial court properly submitted the issue to the jury, who, by their verdict, necessarily found that Sulzby was not contributorily negligent.
 III.
Finally, the County contends that the jury improperly ignored the testimony of Mr. John Noettl, a qualified Jeep accident reconstruction expert.
Mr. Noettl testified that AMC Jeep vehicles, like the one Sulzby was driving, were unstable and more likely to roll over as a result of a sudden turn by the driver. He further testified that the design of the vehicle was the cause of the accident, and that only a Jeep would roll over under the circumstances on 23rd Avenue, N.W.
In Alabama, opinion testimony of an expert witness is binding upon a jury only when such testimony concerns a subject which is exclusively within the knowledge of experts and the testimony is uncontroverted. Ex parte Blue Cross-Blue Shield ofAlabama, 401 So.2d 783, 785 (Ala. 1981).
In this case the testimony was far from uncontroverted as to the cause of Sulzby's accident. Although testimony on one side indicated that the Jeep design may have been the cause of the accident, there was also evidence that the defective condition of 23rd Avenue N.W. was at least a contributing proximate cause of the accident. Accordingly, there was sufficient evidence to submit the issue to the jury, and for the jury to determine the liability of the County.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.