NORTHBROOK NATIONAL INSURANCE COMPANY, Plaintiff-Appellant and Cross-Appellee, v. NEHOC ADVERTISING SERVICE, INC., d/b/a Lee Enterprises, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (1st Division)   No. 1—88—2171

Opinion filed December 18, 1989.—Rehearing denied May 16, 1990.

Condon, Cook & Roche, of Chicago (Francis J. Leyhane III and Mark E. Condon, of counsel), for appellant.

Arvey, Hodes, Costello & Burman, of Chicago (Rosemarie J. Guadnolo, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from a declaratory judgment action brought by Northbrook National Insurance Company (Northbrook) in the circuit court of Cook County against NEHOC Advertising Service, Inc. (NEHOC), seeking an order declaring that it was not obligated to defend or indemnify NEHOC for potential claims brought by third parties. The circuit court granted summary judgment in favor of Northbrook and against NEHOC on Northbrook's second-amended declaratory judgment complaint. Thereafter, NEHOC's motion for summary judgment on its counterclaim was granted. It is from these rulings that Northbrook appeals and NEHOC cross-appeals. We affirm.

The facts giving rise to such claims against NEHOC are as follows: In August 1984, Uarco, Inc., contracted with NEHOC for the performance of certain mailing services in connection with materials prepared by a Uarco client, the Viguerie Company (TVC), for the 1984 presidential election. The Uarco project was assigned to NEHOC employee James Matt. Matt, NEHOC's general manager, was responsible for production scheduling and completion. This specific project required Matt to assemble and mail approximately 2.5 million pieces of correspondence soliciting funds to be contributed to Ruff PAC, a political action committee.

Matt performed only a portion of the Uarco project. Work which was claimed to have been completed was not, documentation was falsified by him so that it appeared that the correspondence was mailed, and hundreds of thousands of pieces of mail which were claimed to have been mailed were discarded and delivered to a trash collector for disposal as waste.

Northbrook filed its original declaratory judgment action on March 26, 1986, to determine its obligations to defend or indemnify NEHOC for its potential liability to Uarco, TVC and Ruff PAC, the three of whom had brought suit in the Federal district court seeking damages from NEHOC on contract and tort grounds.

As part of its answer to Northbrook's declaratory judgment complaint, NEHOC filed a counterclaim asserting (1) that claims were asserted against it as a defendant and counterdefendant by Uarco, TVC and Ruff PAC in a Federal court action originally brought by Uarco against TVC; (2) that NEHOC had "notified Northbrook of all of the claims asserted against it and *** tendered the defense of those claims to Northbrook pursuant to the terms of the Insurance Policy"; and (3) that "Northbrook is obligated to defend NEHOC and indemnify it for any judgment which may be entered against it upon those claims."

On October 14, 1986, Northbrook was granted leave to file a first-amended declaratory judgment complaint. On April 30, 1987, Northbrook was granted leave to file a second-amended declaratory judgment complaint when the procedural posture of the pending litigation in Federal court had changed. Due to a settlement of disputes, TVC and Ruff PAC were no longer parties to the Federal case, and therefore not included in Northbrook's second-amended declaratory judgment complaint. The only remaining claim against NEHOC was count I of a cross-claim brought by Uarco alleging a breach of contract.

Northbrook filed a motion for summary judgment on September 14, 1987, based upon its second-amended declaratory judgment complaint after NEHOC had agreed to settle Uarco's breach of contract claim for $284,582.12. In response, NEHOC filed a cross-motion for summary judgment based upon the second-amended declaratory judgment complaint and a motion for summary judgment on its counterclaim. In its motion, NEHOC contended that Northbrook had an obligation to defend and indemnify NEHOC against Uarco's claim against NEHOC in Federal court.

On January 12, 1988, the circuit court granted summary judgment in favor of Northbrook and against NEHOC on Northbrook's second-amended declaratory judgment complaint. The circuit court denied NEHOC's motion for summary judgment on its counterclaim. On January 19, 1988, NEHOC moved to vacate the January 12, 1988, order, and a hearing on NEHOC's motion to vacate the order was held on February 4, 1988. The circuit court made a finding that the portion of the January 12, 1988, order denying NEHOC's motion for summary judgment on its counterclaim be vacated and hearing on such motion be rescheduled for February 18, 1988.[1] On that date, the circuit court granted NEHOC's motion for summary judgment on its counterclaim and denied Northbrook's motion to reconsider the ruling.

■ Initially, as to Northbrook's appeal of the circuit court's entry of summary judgment in favor of NEHOC, Northbrook contends that NEHOC is not entitled to relief under the policy because it failed to file a counterclaim to Northbrook's amended declaratory judgment complaints. After Northbrook filed its first- and second-amended com-

---

[1]On May 6, 1988, NEHOC's appeal of paragraphs 1 and 2 of the February 4, 1988, order denying its cross-motion for summary judgment on Northbrook's second-amended declaratory judgment complaint, docketed on appeal as case No. 1—88—0705, was dismissed by this court as premature pursuant to Supreme Court Rule 303(a)(2) (107 Ill. 2d R. 303(a)(2)). NEHOC now cross-appeals paragraphs 1 and 2 of the February 4, 1988, order.

plaints, NEHOC did not file or renew its counterclaim to the original complaint.

We reject Northbrook's argument. We believe that the recent holding in *Anderson v. Sconza* (1989), 179 Ill. App. 3d 202, 534 N.E.2d 445, is controlling on this issue. In *Anderson*, the court held that a defendant's failure to file an amended counterclaim after plaintiff files an amended complaint does not defeat defendant's claim for relief. (*Anderson*, 179 Ill. App. 3d at 207, 534 N.E.2d at 449.) In so holding, the *Anderson* court reasoned that a counterclaim is a pleading which is "complete in itself," as provided in section 2—608(c) of the Illinois Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—608(c)) (*Anderson*, 179 Ill. App. 3d at 207, 534 N.E.2d at 449), and that no requirement exists under the Code that a counterclaim be repleaded each time an original complaint is amended to preserve the counterclaim's effect on the subsequent complaint. The court further reasoned that "a counterclaim differs from an answer in that it seeks affirmative relief, whereas an answer merely attempts to defeat the *** action." *Anderson*, 179 Ill. App. 3d at 207, 534 N.E.2d at 449.

Based upon the above, we find that NEHOC's counterclaim was not abandoned. Consequently, the pleadings alleged in NEHOC's counterclaim are properly before us.

■ Northbrook next contends that even if NEHOC's counterclaim was not abandoned, it failed to adequately allege a basis for liability under the policy and that it was error for the circuit court to grant NEHOC's motion for summary judgment. When reviewing a circuit court's entry of summary judgment, our sole function is to determine whether a genuine issue of material fact exists, and whether judgment for the movant was correct as a matter of law. (*Warren v. Coca-Cola Bottling Co.* (1988), 166 Ill. App. 3d 566, 519 N.E.2d 1197; *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 414 N.E.2d 865; *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 365 N.E.2d 638; Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) It is apparent that no genuine issue of material fact exists here. Thus, we need only determine whether judgment for NEHOC was correct as a matter of law.

The circuit court determined that Northbrook was not liable to NEHOC under the "General Liability" provisions of the policy, but found, based upon NEHOC's counterclaim and motion for summary judgment, that a basis for liability existed under section IA of the "Crime Insurance Schedule." Section IA of the "Crime Insurance Schedule," containing a $200,000 limit of liability, provides the following:

*"Employee Dishonesty Commercial Blanket Coverage*
Loss of Money, Securities and other property which the Insured shall sustain, to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IA through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others."

In finding Northbrook liable under this provision, the circuit court found that "the use of the words loss of monies, securities, and other properties includes the loss suffered under the facts and circumstances set forth in this case, and that [Northbrook] has an obligation to pay [NEHOC] under the terms and provisions of the policy for the loss sustained."

■■ Northbrook argues that NEHOC's counterclaim failed to specifically set forth the "Crime Insurance Schedule" of the policy as a basis for liability, and that the only coverage afforded to NEHOC under the facts presented here is the "General Liability" coverage, expressly related to indemnification claims. We find that the allegations contained in NEHOC's counterclaim were sufficient to allow the circuit court to make a determination regarding Northbrook's liability.

■■ As to the "Crime Insurance Schedule" and whether its provisions provide coverage to NEHOC under the facts presented here, general rules of construction govern this determination. Where contract provisions are clear and unambiguous, a court will apply the provisions as written. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5, 429 N.E.2d 1203, 1205; *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 691, 414 N.E.2d 1218, 1221-22.) The words of a policy should be given their plain and ordinary meaning, and courts should not strain to find an ambiguity where none exists. (*United States Fire Insurance Co.*, 88 Ill. 2d at 5, 429 N.E.2d at 1205.) Furthermore, an insurance contract, like any other contract, must be construed as a whole. *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 514 N.E.2d 150; *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.

Applying these principles, we find that the policy in the instant case is unequivocal and the circuit court's entry of summary judgment in favor of NEHOC was correct as a matter of law.

■■ We conclude that the specific provisions under section IA of the "Crime Insurance Schedule," entitled "Employee Dishonesty Commercial Blanket Coverage," afford coverage to NEHOC. Due to Matt's fraudulent and dishonest acts, NEHOC sustained "[l]oss of

[m]oney, [s]ecurities and other property." Pursuant to the plain language of the provision, which is consistent with the policy's purpose to defend and indemnify NEHOC, Northbrook is obligated to indemnify NEHOC for its losses.

■ Northbrook's final contention is that the circuit court erred in considering an affidavit submitted by David Sajovic, NEHOC's president, and NEHOC's "appendix." It argues that the affidavit, which set forth the events surrounding the Uarco project, was not properly before the circuit court because it did not affirmatively show that Sajovic, if called to testify, could testify competently to the affidavit's contents as required under Supreme Court Rule 191(a) (107 Ill. 2d R. 191(a)). (See also *Allied American Insurance Co. v. Mickiewicz* (1984), 124 Ill. App. 3d 705, 464 N.E.2d 1112.) Rule 191(a), which governs affidavits in summary judgment proceedings, states the following, in pertinent part:

> "Affidavits in support of and in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (107 Ill. 2d R. 191(a).)

We find that the Sajovic affidavit sufficiently meets the requirements under Rule 191(a). Here, the Uarco project is a matter well within Sajovic's personal knowledge as president of NEHOC, and therefore, he could competently testify as to the contents of his affidavit if called upon to do so.

Northbrook argues that certain documents contained in NEHOC's appendix, including pleadings, correspondence between the parties, such as proof of loss documentation, and a complete copy of the insurance policy at issue, were not authenticated by Sajovic's affidavit and are irrelevant to the summary judgment proceedings. The record discloses that the circuit court considered only those materials that were "germane to the problem." Thus, Northbrook could not have been prejudiced by NEHOC's reference to the appendix on the basis that certain documents were not authenticated by Sajovic's affidavit, or on the basis that the documents contained in the appendix were not relevant to the proceedings.

■ We now turn to NEHOC's contention on its cross-appeal that the circuit court erred in granting summary judgment in favor of

Northbrook on Northbrook's second-amended declaratory judgment complaint. The circuit court granted summary judgment under the provisions set forth under the "General Liability" section of the insurance policy and on the grounds that Northbrook cited as uncontested facts the events surrounding the acts of NEHOC's employee, Matt.

These facts had previously been set forth in Uarco's cross-claim against NEHOC and in Northbrook's second-amended declaratory judgment complaint without denial on behalf of NEHOC. Allegations not specifically denied must be deemed true. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—610(a), (b); *Hiram Walker Distributing Co. v. Williams* (1981), 99 Ill. App. 3d 878, 426 N.E.2d 8.) Thus, even assuming *arguendo* that Northbrook's motion for summary judgment contained contested facts, we are compelled to find that NEHOC's failure to deny such facts constituted an admission. Ill. Rev. Stat. 1987, ch. 110, pars. 2—610(a), (b).

In determining whether insurance coverage exists in a declaratory judgment action, the pleadings at issue and the insurance policy need only be considered. (See *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 476, 430 N.E.2d 1104, 1108; *Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335, 339.) The circuit court considered both the pleadings and insurance policy here and determined that no basis existed for liability against Northbrook under the "General Liability" provisions. The court based its determination on NEHOC's failure to meet the policy definition of "occurrence" and the specific policy exclusions set forth below.

The "General Liability" provisions state, in pertinent part as follows:

> "[Northbrook] will pay on behalf of [NEHOC] all sums which [NEHOC] shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an *occurrence*, and [Northbrook] shall have the right and duty to defend any suit against [NEHOC] seeking damages on account of such bodily injury or property damage * * *." (Emphasis added.)

An "occurrence" under the "General Liability" coverage is defined as follows:

> " 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured[]."

We believe that the circuit court correctly determined under these provisions that Northbrook did not have a duty to defend or indem-

nify NEHOC under the "General Liability" provisions of the policy, as NEHOC has not satisfied the policy definition of "occurrence." Moreover, even if NEHOC had met the policy definition of "occurrence," it failed to overcome policy exclusions j(1), j(2)(a),[2] k[3] and m(2)[4].

In conclusion, we affirm the circuit court of Cook County on all issues presented by the parties on appeal and cross-appeal.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.

---

[2]The exclusions under section (j) are as follows and do not insure:
"Property Damage:

(1) to property owned or occupied by or rented to the Insured, or, except with respect to the use of elevators, to property held by the Insured for sale or entrusted to the Insured for storage or safekeeping;

(2) except with respect to liability under a written sidetrack agreement or the use of elevators;

(a) to property while on the premises owned by or rented to the Insured for the purpose of having operations performed on such property by or on behalf of the Insured[]."

[3]Exclusion k states the following:
"[L]oss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

(2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured[ ]."

[4]Exclusion m states:
"[W]ith respect to Insurance as is afforded to any employee of the Named Insured:

\* \* \*

(2) property damage to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by:

(i) another employee of the Named Insured;

(ii) the Named Insured, or if the Named Insured is a partnership or joint venture, any partner or member thereof."