SHENANDOAH LIFE INSURANCE COMPANY

V.

RITA FRENCH

Record No. 851000

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

*Wade W. Massie (Penn, Stuart, Eskridge & Jones*, on briefs), for appellant.

*Florence A. Powell (Mullins, Keuling-Stout, Thomason & Harris*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

The main issue in this appeal is whether Rita French is entitled to collect $25,000 in accidental death and dismemberment (AD&D) benefits from Shenandoah Life Insurance Company (Shenandoah Life) as a result of the death of her husband Roy L. French in an on-the-job mining accident on May 22, 1984. Roy was killed while working for Lambert Coal Company, Inc. (Lambert), one of Shenandoah Life's insureds.

In 1982, Lambert applied to Shenandoah Life for group life and accident insurance for its employees. The insurance application requested "nonoccupational" AD&D benefits as opposed to "24-Hour" AD&D benefits. Under 24-Hour AD&D coverage, Roy's widow would be entitled to an additional $25,000 so long as Roy died in an accident, whether that accident was work related or not. Under nonoccupational AD&D coverage, Roy's widow

would be entitled to an additional $25,000 only if Roy died accidentally from non-work-related causes.

Shenandoah Life granted the application. The master policy, which Shenandoah Life issued to Lambert, provided for $25,000 life insurance and $25,000 in nonoccupational AD&D coverage for employees such as Roy. The premiums charged to and paid for by Lambert, without any contribution from the employees, were based on nonoccupational AD&D coverage. However, a defective certificate of insurance, prepared by Shenandoah Life, was given to Roy. That certificate did not contain the nonoccupational AD&D coverage exception, which was contained in the master policy, to the effect that AD&D benefits were "not payable for any loss to which a contributing cause [was]: . . . injury arising out of, or in the course of, any employment for wage or profit."

After Roy's death, Rita applied for and received the $25,000 life insurance payment. She also demanded an additional $25,000 in AD&D coverage. Shenandoah Life denied the latter claim on the ground that Roy's death was work related and thus not covered under the policy's AD&D provisions. Rita sued.

In a three-count motion for judgment filed October 15, 1984, Rita alleged in Count I that Shenandoah Life was "obligated under its contract to pay the said sum of Twenty-Five Thousand Dollars ($25,000.00) plus interest to Rita French, the beneficiary of said accidental death policy and is further estopped from claiming any different coverage." In Count II she alleged gross negligence on the part of Shenandoah Life in sending Roy the wrong insurance certificate. In Count III she alleged misrepresentation. In all three counts she demanded punitive damages and attorneys' fees. The trial court struck Counts II and III along with all claims for punitive damages and attorneys' fees.

The case was submitted to the jury on the basis of Count I, as modified by the trial court. The jury returned a $25,000 verdict in favor of Rita. The jury also awarded Rita prejudgment interest. The trial court disallowed the prejudgment interest, then entered judgment upon the verdict.

On appeal, Shenandoah Life makes two assignments of error. The first is that Rita's pleading and proof were insufficient to create a jury issue on breach of contract or estoppel and, therefore, the trial court erred in overruling Shenandoah Life's demurrer, denying its motion to strike plaintiff's evidence, and denying its motion to set aside the verdict. The second assignment of error is

that the trial court erred in granting and in refusing certain jury instructions. Further, Rita assigned cross-error to the trial court's disallowance of prejudgment interest. Given our view of the case, we need not consider the assignment of error concerning instructions nor the assignment of cross-error concerning prejudgment interest. In our opinion, Shenandoah Life's first assignment of error requires that this case be reversed.

As pointed out above, Count I of the motion for judgment mentioned both breach of contract and estoppel. It is unmistakably clear from the record that these quite different theories were involved, in whole or in part, in the trial of this case. Indeed, Shenandoah Life's first assignment of error complains about insufficient pleading and proof of "breach of contract or estoppel." However, on brief and in oral argument Rita's counsel asserts that this case was tried solely as a breach of contract case and not as an estoppel case. On brief Rita wrote as follows:

> During the trial of the case the plaintiff relied on the contract theory and did not pursue its grounds of estoppel . . . .
>
> . . . .
>
> Under the pleadings and the evidence, the plaintiff could have submitted the case to the jury on the two grounds, contract and estoppel, but the plaintiff chose to submit the case on the contract theory. It is noted that the plaintiff offered no instructions on estoppel. The court did not instruct the jury on estoppel at plaintiff's request. The term "estoppel" was only injected into the trial of the case by the defendant.

During oral argument, Rita's counsel reiterated this position.

■ We interpret Rita's position to mean that, to the extent the jury verdict was based on estoppel, Rita makes no effort to defend it. In other words, according to Rita, estoppel was never intended to be the basis upon which the case was tried. We accept the representations of Rita's counsel that Rita's theory of the case was breach of contract, standing alone.

■ Accepting the proposition that this was solely a breach-of-contract case, we conclude that the trial court made a fundamental error in determining what constituted the contract which could be sued upon. Rita contended that the defective certificate sent to Roy was part of the contract of insurance. According to her, there

was a conflict within the insurance policy because of the difference between the master policy and the certificate. Rita further contended that this conflict rendered the insurance policy ambiguous; that the ambiguity was to be resolved against the insurer and in favor of the insured; and that coverage was therefore required to be accorded to Rita as if the AD&D provision had been for "24-hour" protection instead of nonoccupational protection.

The trial court agreed with Rita. It instructed the jury as follows: "The court instructs the jury that the contract between Shenandoah Life Insurance Company and Roy French consist[s] both of the master policy and the certificate and any conflict between the two should be resolved so as to provide the broadest coverage for Roy French."

■ Rita's breach-of-contract theory runs counter to former Code § 38.1-426 (now Code § 38.2-3327), which provided in pertinent part as follows: "In each such policy there *shall be a provision* that the policy, or the policy, the application, if any, of the policyholder, and the individual applications, if any, of the persons insured *shall constitute the entire contract between the parties . . . .*" (Emphasis added.) Significantly, this Code section, which described the "entire contract between the parties," did not include the certificate of insurance as part of the contract.

Former Code § 38.1-428 (now Code § 38.2-3331), concerned the certificate of insurance. It provided in pertinent part as follows: "In each such policy there shall be a provision that the insurer will issue to the policyholder for delivery to each person insured *an individual certificate setting forth a statement as to the insurance protection to which he is entitled . . . .*" (Emphasis added.) Rita argues that unless the certificate required by Code § 38.1-428 is treated as part of the contract of insurance, that Code section is meaningless. We disagree.

■ The two provisions related to the same subject matter: insurance policies. They were in close proximity to each other in the Code. Code § 38.1-426 declared, in the language of command, what *shall* constitute an insurance contract. Moreover, Code § 38.1-428 did have independent meaning if it was looked upon as a notice provision which required insurance carriers to advise each insured of coverage. The provision did not contain a penalty for its violation. Nor did it state that the certificate conferred any rights. Under these circumstances, we think it unreasonable to say that the legislature's failure to include the certificate of insurance as

part of the contract was inadvertent or an oversight. We will give Code § 38.1-426 effect as it was written. We hold, therefore, as a matter of statute in Virginia, that the certificate on which Rita relied as part of Roy's contract of insurance simply was not part of the contract.

■ Further, as a matter of fact, the certificate stated on its face that it was subject to the terms of the policy. The following paragraph was at the bottom of the first page of Roy's certificate:

> You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. *As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.*

(Emphasis added.) Thus, the certificate itself put the insured on notice that the policy terms were controlling.

For all the foregoing reasons, we hold that the trial court erred in failing to set aside the verdict against Shenandoah Life. We will, therefore, reverse the judgment of the trial court and enter final judgment here in favor of Shenandoah Life.

*Reversed and final judgment.*