567 A.2d 147

**BLUE CROSS AND BLUE SHIELD OF MARYLAND, INC.**

v.

**CHESTNUT LODGE, INC., Et al.**

**No. 453, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Dec. 22, 1989.

Certiorari Denied March 9, 1990.

**150**

Jack F. McGarvey, Baltimore, for appellant.

Steven P. Hollman (Robert B. Duncan and Hogan & Hartson, on the brief), Washington, D.C., for appellees.

Argued before GARRITY, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This appeal by Blue Cross and Blue Shield of Maryland, Inc. (hereinafter sometimes referred to as "Blue Cross" and "appellant") and this cross-appeal by appellees Chestnut Lodge, Inc. ("Chestnut Lodge") and Gloria A. Powell ("Powell") both involve benefits payable under a group health insurance policy issued by Blue Cross to employees of the State of Maryland and their beneficiaries. Blue Cross's appeal challenges both the propriety and the amount of the judgment in favor of appellees. The cross-appeal, on the other hand, asserts appellees' entitlement to pre-judgment interest. Perceiving no error, we will affirm the judgment of the Circuit Court for Montgomery County.

On or about October 20, 1981, Ms. Powell's minor dependent son, Anthony E. Powell, was admitted, upon medical advice, to Chestnut Lodge for treatment of his emotional problems. Her agreement to pay Chestnut Lodge $190.00 per day for his care and treatment was covered by Ms. Powell's ex-husband's military insurance.

As a Maryland State Government employee, Ms. Powell and her dependents were eligible for enrollment in a group insurance plan offered by Blue Cross. Therefore, in January, 1983, at open enrollment, she enrolled herself and her minor daughter, but not her son, in Blue Cross's Plan II health care program, which provided both basic and major medical coverage. She received a program benefits booklet, and read it completely. When Ms. Powell received the booklet, she was told that it clearly described the benefits available under the plan and that it contained everything a subscriber would need to know.

On the inside cover of the booklet was the following admonition:

KEEP THIS BOOKLET IN A SAFE PLACE—If a Member requires care, refer to this booklet for information about benefits. This booklet is provided for descriptive purposes only and therefore, necessarily is brief. *All benefits are subject to provisions of the contracts between the State of Maryland, Blue Cross of Maryland, Inc., and Blue Shield of Maryland, Inc.* (Emphasis added).

The booklet represented that both the basic and the major medical plans provided coverage and benefits relating to "[c]are for nervous and mental conditions." Under the basic plan, they are limited to up to 30 days hospitalization, while the major medical benefits would pay for the treatment of those conditions after the basic benefits were exhausted. Neither the description of the basic plan nor the major medical plan contained an "exclusion" for an admission in progress.

Concerned over the adequacy of the coverage provided her son by her ex-husband's insurance, Ms. Powell sought to enroll her son in her Blue Cross plan. Preparatory to doing so, however, she reread the benefits booklet. Finding nothing that would exclude her son from coverage, she sought further assurance from Angela Roberts, whom she believed to be a Blue Cross representative, but who was, in actuality, the Health Benefits Coordinator for the State of Maryland. When Ms. Roberts confirmed her conclusion that, despite his hospitalization, her son was eligible for coverage, Ms. Powell enrolled him in her Blue Cross Plan II health care program.

Subsequently, Ms. Powell contacted Chestnut Lodge and executed an authorization and assignment of benefits to it. Chestnut Lodge then filed, with Blue Cross, a claim for services rendered to Ms. Powell's son in March, 1984. That claim, and those that followed, were submitted to Blue Cross's major medical benefits division.

Blue cross forwarded to Ms. Powell, in respect of the claims for her son's care and treatment, Explanation of Benefits Forms. Each form stated: "THESE CHARGES APPEAR TO BE ELIGIBLE FOR BLUE CROSS BENE-FITS. WE HAVE REFERRED THEM FOR YOU. IF THERE IS A BALANCE AFTER THEY HAVE BEEN PROCESSED, YOU MAY REFILE TO US." Although, as its evidence disclosed, Blue Cross intended, by that language, to convey the message that the claims were not covered—major medical benefits do not apply until there has been an initial claim for, and exhaustion of, basic benefits—Ms. Powell interpreted it to mean that her son was covered.

When she continued to receive Explanation of Benefits Forms, but no payments Ms. Powell telephoned Angela Roberts, who, after running a computer check, informed Ms. Powell that she should receive a check within a couple of days. At about the same time, someone from Chestnut Lodge spoke to Blue Cross's Bill Gray and was informed that the claims processing would be straightened out in a

couple of weeks. Shortly thereafter, Ms. Powell received a Statement of Eligible Coverage for August, 1984 and a check, dated October 18, 1984, for $7,490.00. She turned the check over to Chestnut Lodge. The next month, Chestnut Lodge received a Statement of Eligible Coverage for September, 1984 and a check, dated November, 1984, for $7,590.00.

An "open enrollment" period, during which State of Maryland Employees were permitted to choose the insurance coverage they desired, was held between August 28 and September 21, 1984. Since Blue Cross had replaced the existing Plan II program with a new High Option Plan, effective November 1, 1984, a new benefits booklet was issued. That booklet contained a letter to State employees and retirees from Blue Cross' Director of Account Services, which explained, "If you are currently enrolled in the existing Plan II which is comparable to the new High Option Plan, your membership will automatically continue in effect in the new High Option Plan beginning November 1, 1984. You do not need to submit an application/payroll deduction card." Ms. Powell chose to continue her current coverage. And because she was informed that to do so, she need not do anything or make any changes in her current Blue Cross policy, she did not read the new booklet.

Both the new benefits booklet and the old one contained a statement that all benefits are subject to the provisions of the master contract between the State of Maryland and Blue Cross. Additionally, both booklets reflected that the plan chosen by Ms. Powell included within its coverage "care for nervous and mental conditions". Whereas the old benefits booklet did not contain an exclusion for a person who was in the hospital at the time that coverage would have otherwise become effective—a hospitalization in progress—the new booklet contained such an exclusion under the basic Blue Cross coverage. Both the new benefits booklet and the old one had been reviewed by Blue Cross and approved by the State of Maryland prior to distribution to the enrollees.

Notwithstanding that each claim form submitted to Blue Cross contained, in the box designated "date of first symptom", the notation, "admitted to hospital October 20, 1981", Blue Cross maintained that it did not become aware, until late 1984, that Ms. Powell's son had been an inpatient at Chestnut Lodge since October 20, 1981.[1] When it did, because the master contract and, in its view, the latest benefits booklet, excluded benefits for admissions in progress, Blue Cross notified Ms. Powell and Chestnut Lodge that Ms. Powell's son's treatment and care at Chestnut Lodge were not covered items. Moreover, it demanded the return of the checks previously issued.[2] The reason given by Blue Cross for denial of coverage was "Our records indicate that the admission was prior to the effective date of coverage."[3] Appellees filed suit against Blue

---

1. By way of explanation, Blue Cross states:
   The reason that the continuous admission was not discovered until the Fall of 1984 was because the claims were being submitted to Major Medical, where an admission date does not have any real significance because the Major Medical claim form is no assistance to Basic Blue Cross in processing the claim, and because the claims were being submitted to the incorrect area, the process of obtaining medical records did not occur, which is part of the routine processing in the Blue Cross Basic section. Chestnut Lodge was previously aware of the mix-up in admission dates; however Mrs. Deppe simply disregarded these clues that there was a problem with determining the correct admission date for the current hospitalization. Further, Mrs. Deppe testified that she sent in the wrong progress notes with each of the claim forms that she did submit, although it was necessary to submit a medical report in order to have the claim processed. (Reference to the record extract omitted)

2. When it became obvious that the care and treatment of her son was not a covered item under her Blue Cross policy, Ms. Powell withdrew him from Chestnut Lodge. At issue on this appeal, therefore, are those amounts incurred prior to the denial of coverage by Blue Cross.

3. Blue Cross explained the processing of the major medical claim forms submitted by Chestnut Lodge even though no claim had been made for basic Blue Cross benefits as "efficiency" and by reference to the fact that the nature and length of the son's illness indicated that major medical benefits would have been called upon to cover a portion of the payments due in respect of care and treatment after the coverage under the basic Blue Cross plan would have been exhausted.

Cross seeking to recover the amount of the claims denied by Blue Cross. They also sought a declaration of their rights under the Blue Cross Group policy and, in particular, that the policy covered "the hospitalization, care and treatment" already rendered to Ms. Powell's son. Although appellees' complaint contained nine counts, only three of them remained at the conclusion of the court trial: breach of contract, negligent misrepresentation and declaratory judgment counts. The trial court found in favor of appellees on both substantive counts and entered a declaratory judgment consistent therewith.[4]

■ The trial court considered alternative grounds for concluding that appellees should prevail in this litigation: It determined that (1) Blue Cross negligently misrepresented the coverage to which Ms. Powell was entitled under the Blue Cross plan she selected;[5] (2) Blue Cross, by virtue of its omission of a significant exclusion from the benefits booklet describing the coverage and distributed to Ms. Powell, was estopped to enforce the exclusion, notwith-

---

**4.** The Declaratory Order, after citing the court's "decision entering judgment in favor of plaintiffs on Counts I [Negligent misrepresentation] and IV [Breach of Contract]," provided:

    1. The insurance policy issued by Blue Cross and Blue Shield of Maryland, Inc. to Gloria A. Powell, Membership Number 579–58–5603, is declared to cover the treatment rendered by Chestnut Lodge to Anthony Powell from March 1984 through January 1985.

**5.** The court found that the following representations supported appellees' position: (1) the first benefits booklet did not contain the exclusion for an admission in progress; (2) the explanation of benefits forms, notwithstanding their purporting to deny coverage, stated that the charges claimed appear to be eligible for Blue Cross benefits; (3) Blue Cross made two payments in respect of the claims; and (4) there was a significant delay between the date of the claims and the date on which Blue Cross rejected the claims. On the other hand, it noted that the reference in the booklet to the master contract and testimony by Blue Cross, both that coverage could not be confirmed over the telephone and that the premium amount was too small to justify the coverage sought cut the other way. Weighing them, the court concluded that it was reasonable for appellees to rely on the former representations.

standing that it was contained in the master policy;[6] and (3) Blue Cross breached its contract with Ms. Powell to provide coverage for the treatment of Ms. Powell's minor son.[7] In its oral opinion, the trial court purported to rely upon the latter finding for its decision. Nevertheless, as Blue Cross acknowledges, critical to each of the alternative findings is the effect of the omission from the benefits booklet of a significant exclusion which is contained in the master contract. Because it is common to each of the alternative findings discussed by the court and is, in fact, dispositive of this issue, we will address it.

As the parties acknowledge, there is authority, *albeit* not Maryland authority, on both sides of the issue. *See* ANNOTATION, GROUP INSURANCE: BINDING EFFECTS OF LIMITATIONS ON OR EXCLUSIONS OF COVERAGE CONTAINED IN MASTER GROUP POLICY BUT NOT IN LITERATURE GIVEN INDIVIDUAL INSUREDS, 6 A.L.R. 4th 835; ANNOTATION, GROUP INSURANCE: WAIVER OR ESTOPPEL ON BASIS OF STATEMENTS IN PROMOTIONAL OR EXPLANATORY LITERATURE ISSUED TO INSUREDS, 36 A.L.R. 3rd 541. The majority of the courts addressing the issue have refused to enforce policy exclusions contained in the master contract but which have been omitted from the benefits booklet or other explanatory materials provided to the insured. *Domke v. Farmers and Mechanics Savings Bank*, 363 N.W.2d 898

---

6. With regard to this alternative, the court relied upon the "considerable authority for the proposition that significant policy exclusions contained in a master contract, but omitted from a brochure distributed to policyholders should not be enforced."

7. The court determined that, since Blue Cross was not able to produce an executed contract containing the exclusion, it had failed to meet its burden of proving that there was an exclusion to that effect in the master contract. On the other hand, the court asserted that appellees met their burden by demonstrating that there was no such exclusion in the benefits booklet. Necessarily involved in the court's determination in this regard, then, is that appellees were entitled to rely upon the benefits booklet as descriptive of the coverage acquired by Ms. Powell.

(Minn.App., 1985); *Kirkpatrick v. Boston Mutual Life Insurance Co.*, 393 Mass. 640, 473 N.E.2d 173 (1985); *Hale v. Life Insurance Co. of North America*, 750 F.2d 547 (6th Cir.1984); *Martin v. Crown Life Insurance Company*, 202 Mont. 461, 658 P.2d 1099 (1983); *Krauss v. Manhattan Life Insurance Company of New York*, 700 F.2d 870 (2d Cir. 1983); *Davis v. Crown Life Insurance Company*, 696 F.2d 1343 (11th Cir.1983); *Linn v. North Idaho District Medical Service Bureau, Inc.*, 102 Idaho 679, 638 P.2d 876 (1981); *Davey v. Louisiana Health Service & Indemnity Company*, 357 So.2d 1170 (La.App.1978); *Van Vactor v. Blue Cross Association*, 50 Ill.App.3d 709, 8 Ill.Dec. 400, 365 N.E.2d 638 (1977), *cert. denied*, 66 Ill.2d 637 (1977); *Lecker v. General American Life Insurance Company*, 55 Haw. 624, 525 P.2d 1114 (1974); *Bauer v. Insurance Company of North America*, 351 F.Supp. 873 (E.D.Wis.1972); *Lewis v. Continental Life & Accident Company*, 93 Idaho 348, 461 P.2d 243 (1969); *Lawrence v. Providential Life Insurance Company*, 238 Ark. 981, 385 S.W.2d 936 (1965). Whether expressed in terms of estoppel, *e.g. Martin v. Oklahoma Farmers Union*, 622 P.2d 1078, 1078–1080 (Okl.1981), or waiver, *e.g., Lewis v. Continental Life & Accident Co.*, 461 P.2d at 249, the underlying rationale of these cases is the unfairness of permitting an insurer, who usually drafts the benefits booklet, or at the very least, reviews it to determine its consistency with the master policy, to raise, as an impediment to coverage, a provision in the master policy which is not contained in the explanatory literature. They recognize that, to construe the provisions in the benefits booklet indicating that coverage is determined by reference to the master contract would render such provisions "a vast, additional exclusionary condition to coverage, making their omission from the [Blue Cross] brochure inexcusable," *Van Vactor v. Blue Cross Association*, 8 Ill.Dec. at 406, 365 N.E.2d at 644, and would "encourage insurers to withhold the master policy and include few important provisions" in the benefits booklet or other explanatory literature provided to insureds. *See Davis v. Crown Life Insur-*

*ance Company,* 696 F.2d at 1346. Thus, language in the benefits booklet to the effect that benefits are subject to the terms of the master policy does not change the result; an insurer will not "be allowed to hide behind the technical provisions of the policy when the misleading shortcomings of his booklet are exposed." *See Bauer v. Insurance Company of North America,* 351 F.Supp. at 876.

Nor does the fact that the exclusion relates to a provision in the master policy excluding conditions commencing prior to the effective date of coverage change the result. *See e.g. Lawrence v. Providential Life Insurance Company,* 385 S.W.2d at 937–39; *Davis v. Crown Life Insurance Company,* 696 F.2d at 1344–46; *Domke v. Farmers & Mechanics Savings Bank,* 363 N.W.2d at 899–901.

On the other side of the issue are those cases which focus on the language in the benefits booklet or other explanatory material, conditioning the coverage upon the provisions contained in the master contract. *See, e.g. Shenandoah Life Insurance Company v. French,* 236 Va. 427, 373 S.E.2d 718 (1988); *Morrison Assurance Company, Inc. v. Armstrong,* 152 Ga.App. 885, 264 S.E.2d 320 (1980) [8];

---

**8.** Notwithstanding adopting a holding favorable to appellant, the court was critical of the rule. In that regard, it opined:

Justice is not well-served by this rule of law. To insist, after a person has paid to secure benefits from an insurance company, that the document upon which she relied, and the only one in her possession, was merely "an instrument which contained a reference to another instrument in which were embodied the limitations" of her actual coverage, as in *Cherokee [Credit] Life [Ins. Co. v. Baker],* 119 Ga.App. [579] at 584, 168 S.E.2d [171] 175 [1969] and its predecessors and progeny, in our view, is unreasonable. We find this application particularly harsh, where, as here, the insurer and the master policyholder are component companies of the same corporate structure. This rule applicable to group policy situations is inconsistent with the established general principle that insurance contracts are always to be construed in favor of the insured and against the insurer, particularly where exclusions are in issue.... Certainly it violates the spirit of the trend toward consumer protection now recognized in all areas of the law.
264 S.E.2d at 323.

*Transport Life Insurance Company v. Karr,* 491 S.W.2d
446 (Tex.Civ.App.1973); *Trustee Life Insurance Company
v. Kidd,* 45 Ala.App. 364, 231 So.2d 141 (1970); *Chrysler
Corporation v. Hardwick,* 299 Mich. 696, 1 N.W.2d 43
(1941); *Boseman v. Connecticut General Life Insurance
Company,* 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937);
*Page v. Prudential Insurance Company of America,* 231
Ala. 405, 165 So. 388 (1936). Illustrative of the cases in this
group and the one appellant deems closest, factually, to the
case *sub judice* is *Trustee Life Insurance Company v.
Kidd.* There, the master group health and accident policy
provided that a dependent of an insured would not be
covered by the policy until the day following that depend-
ent's final discharge from the hospital. The certificate of
insurance issued to the insured, however, did not contain
that exclusion; rather, it provided that it "summarizes *some*
of the provisions of the group policy." (Emphasis in origi-
nal) 231 So.2d at 143. Holding in favor of the insurance
company, the court reasoned that there was no material
conflict between the provisions of the group insurance
policy issued to the policyholder, City of Gadsden, Alabama
and the group certificate issued to its employee. It pointed
out that "the difference in the provisions in the two instru-
ments is the result of an omission of one provision from the
certificate that is contained in the group policy, and, as we
have seen, it was intended that the group policy contain all
of the agreements of the parties of the contract, and the
certificate contain only some of the provisions from the
group policy." 231 So.2d at 144.

In addition to arguing that the cases supportive of its
position are more persuasive, Blue Cross asserts that they
are more closely consistent with Maryland law. In that
regard, it maintains that Maryland has no statutory require-
ment corresponding to the statutory requirements underly-
ing the reasoning in some of the cases supportive of appel-
lees' positions. Thus, Blue Cross maintains that those
authorities are of limited benefit in the decision of the case

*sub judice.*[9]

Not all of the decisions favoring appellees rely on a statutory provision requiring the insurance company to provide specific information in the certificate of insurance or other explanatory material. As appellees point out, the Illinois insurance statute was not even mentioned in the court's opinion in *Krauss v. Manhattan Life Insurance Company;* it was the concurring opinion that cited the statute and it did so only as further support for the "eminently just" majority opinion. 700 F.2d at 874–75. Similarly, *Linn v. North Idaho District Medical Service Bureau* is another example of the use of a state statute to buttress, rather than justify, the court's holding. 638 P.2d at 886.[10]

---

**9.** Appellant points out another basis for the decisions supportive of appellees' position, namely, an ambiguity between the provisions of the benefits booklet and the master policy. Although it does not address this issue directly in its brief, at oral argument, it maintained that the absence of an exclusion, when viewed in light of its inclusion in the master contract, does not create an ambiguity. Suffice it say that we are not persuaded by that argument.

**10.** Maryland Code Ann. art. 48A, § 354P sets forth what a nonprofit health service plan must furnish to its insured. It provides:

> Every nonprofit health service plan providing hospital benefits shall furnish as part of the certificate form or the booklet describing the coverage to be afforded, a statement of the plan's principal claim practices. The statement shall include practices for payment for surgical procedures performed by two or more surgeons, payment for services provided in-area by nonparticipating providers, and payment for services provided out-of-area by affiliated plans and affiliated providers.

It is clear from the foregoing that a nonprofit health service plan must provide a booklet describing the coverage to be afforded and that the booklet must contain a statement of the plan's *principal claims practices.* While the language of the statute may not be as precise as the language used in some state statutes, an argument may be made that it is similar, significantly and sufficiently so, to the language of the statute in *Davey v. Louisiana Health Service & Indemnity Company,* 357 So.2d at 1175: "The insurer shall issue to the employer association for delivery to each employee or member insured under such group policy, an individual certificate *containing a statement as to the insurance protection to which he is entitled and to whom payable."* (Emphasis in original) Under that argument, the phrase "principal claims practices", would be construed to refer, of necessity, to material terms of the policy of which an enrollee needs to be aware.

Furthermore, and more importantly, we have concluded that the cases refusing enforcement of an exclusion, contained in the master contract but omitted from the benefits booklet supplied to the enrollee, are the better reasoned and more persuasive authorities. Accordingly, we hold that the trial court quite properly entered judgment in favor of appellees.

Appellees sought to recover the amounts due in respect of claims filed between March 1, 1984 through January 31, 1985. The foregoing discussion applies, certainly, to the benefits booklet in effect during the period from March 1, 1984 through November 1, 1984. On November 1, 1984, another benefits booklet became effective and, as indicated earlier, the Basic Benefits section of that booklet contained an exclusion for admissions in progress. Arguably, therefore, one could conclude that that exclusion carried over to Major Medical. Nevertheless, the trial court's award of benefits for the period between November 1, 1984 through January 31, 1985 was not incorrect. Because the letter from Blue Cross's Director of Accounts Services informed present enrollees of Plan II that it was comparable to the new High Option Plan and its membership would continue automatically in effect after November 1, 1984, without the enrollee doing anything further, we believe that the trial court implicitly found, and very reasonably so, that Ms. Powell could legitimately have relied upon that statement.

## DAMAGE CALCULATIONS

Blue Cross' complaints concerning the calculation of damages by the trial court are twofold. First, it contends that the court's opinion makes clear that it made awards only for

Moreover, Md.Code Ann., art. 48A § 354C(a)(iv) makes it unlawful "[t]o deny a claim made by any person under a contract, certificate or policy under a nonprofit health service plan for any unfair, arbitrary, capricious or unfairly discriminatory reason." The denial of a claim based only on a provision in the master contract, when the booklet the enrollee has been given does not contain it, is, at the very least, "unfair."

the period March, 1984 through October, 1984. Second, it asserts that appellees' proof "indicated that for therapeutic pass days (when the patient is not present at the facility) there are no benefits available for those charges." In its view, therefore, the damage award was excessive by approximately $15,000.00.

Addressing appellant's second argument first, it is clear that the very exhibits relied upon by Blue Cross totally belie its position. The record reflects that appellees sought to recover, rather than exclude, benefits for therapeutic pass days. Consequently, as to that issue, we discern no error.

That the trial court, when delivering its opinion, at times referred to the Plan II benefits booklet, and not the booklet that superceded it, the High Option Plan Booklet, does not necessarily mean that it limited or intended to limit, its award to the period during which that benefit booklet was in effect. Indeed, in the absence of a denial of benefits by Blue Cross, Ms. Powell could justifiably have relied upon the statements by Blue Cross' Director of Account Services in the introduction to the new High Option Plan Booklet. It follows, therefore, that the trial court did not err in calculating damages.

## CROSS–APPEAL–PREJUDGMENT INTEREST

■ The total charges for which appellees submitted claims for services rendered between March 1, 1984 through January 31, 1985 were $85,495.75. Appellees sought prejudgment interest on that amount, from the date on which Blue Cross first denied the claims. The trial court denied the request, stating that "[g]iven the scenario in this case, it does not seem that—I do not think as a matter of right Mrs. Powell or Chestnut Lodge would be entitled to prejudgment interest, I will decline any award of prejudgment interest...." Appellees maintain that, inasmuch as the trial court applied the wrong legal standard, this ruling was error.

The law in Maryland with reference to interest is well settled. The general rule is that interest should be left to the discretion of the jury, or the Court when sitting as a jury. However, this general rule is subject to certain exceptions that are as well established as the rule itself. Among the exceptions are cases on bonds, or on contracts, to pay money on a day certain, and cases where the money has been used. If the contractual obligation be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due.

*Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc.,* 213 Md. 509, 516, 132 A.2d 582 (1957) (citations omitted).

Appellate review of a judgment denying the award of prejudgment interest is guided by the same standard as that applicable to the review of a judge's award of prejudgment interest:

There is, of course, a presumption that the discretion vested in the trial court "was not abused but was exercised with just regard to the rights and interest of both the plaintiff and defendants", *Moreland, Inc. v. Moreland,* 175 Md. 145, 149, 199 A. 871, 872 (1938), thus the burden is upon the appellant of establishing that "according to the equity and justice appearing between the parties on a consideration of all the circumstances of the particular cases disclosed at the trial," the trial court abused its discretion and worked an injustice to the appellant by its award of interest. *See, State, Use of Havre de Grace v. Fahey,* [108 Md. 533, 70 A. 218 (1908)]; *see also Bucher v. Federal Baseball Club of Baltimore, Inc.,* 130 Md. 635, 643–44, 101 A. 534, 538 (1917).

*I.W. Berman Properties v. Porter Brothers, Inc.,* 276 Md. 1, 19–20, 344 A.2d 65 (1975).

It is, of course, true that the major thrust of this case related to Blue Cross's obligations to pay the claims, rather

than the amount of the claims.[11]  It is also true that it is appellees' burden, since they are the ones seeking prejudgment interest, to demonstrate their entitlement to the award of such interest.  Perusal of their brief reveals that they have not met their burden.  Aside from asserting that the trial court applied the wrong legal standard, they do no more than offer the rationale underlying the award of prejudgment interest and a refutation of the argument that a good faith denial of coverage and the consequent good faith litigation of the issue, does not preclude the award of prejudgment interest.  While we cannot quarrel with appellees' statements of the law, we fail to see how they provide the proof necessary to establish an abuse of discretion by the trial court.  Accordingly, we reject appellee's cross-appeal.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID ONE–THIRD BY APPELLEES AND TWO–THIRDS BY APPELLANT.

---

**11.**  While Blue Cross has raised the issue on appeal, the record reflects that it did precious little at trial to contest the amount of the claim. Indeed, a logical and reasonable argument could be made that the issue sought to be raised on appeal as to the amount has been waived.