345 So.2d 795 (1977)
Edith M. RUCKS, Appellant,
v.
OLD REPUBLIC LIFE INSURANCE COMPANY, Appellee.
No. 76-1533.
District Court of Appeal of Florida, Fourth District.
April 15, 1977.
As Modified on Denial of Rehearing June 10, 1977.
Richard V. Neill of Neill, Griffin, Jeffries & Lloyd, Chartered, Fort Pierce, for appellant.
*796 Emory C. Teel, III, of Fee, Parker & Fee, P.A., Fort Pierce, for appellee.
LETTS, Judge.
This is an appeal from a final judgment denying the appellant coverage under a credit life insurance policy issued to her deceased husband.
We reverse.
The facts of this case indicate that the appellant and her now deceased husband borrowed $117,000 from a bank, securing the loan with a mortgage on their property. At that time, appellee insurance company issued them a credit life insurance policy certificate which included the statement that "the amount of insurance may not at any time exceed $35,000" and that the certificate issued was "under and subject to the terms and conditions of the Creditors Group Policy." The group policy which was never seen by or discussed with appellant or her husband, said in part:
If the life of any debtor is insured in connection with more than one indebtedness, the aggregate amount of insurance in force on his life shall in no case exceed a maximum of $35,000. If the total amount of insurance on any one life evidenced by the statements of insurance issued exceeds the specified maximum, payment shall be made under the separate statements of insurance in the order in which they were issued, and the liability of the Company with respect to the excess insurance shall be limited to a refund of the premium for such excess insurance.
Unaware that the maximum amount payable in case of death was $35,000, even if two certificates were taken out, appellant and her husband took out more life insurance on a second loan of $40,000 made two years later, paying additional premiums therefor. Upon her husband's death, the bank received $35,000 under the first certificate, but did not even attempt to collect any proceeds from the second certificate. The insurance company then advised appellant that the group policy precluded recovery beyond $35,000 and returned the premiums paid on the second certificate.
We believe that this court already decided this question in Equitable Life Assurance Society of the United States v. Wagoner, 269 So.2d 747 (Fla. 4th DCA 1972) where the court said:
As a practical matter, the certificate is the only document which the insured under a group life insurance policy ever sees. When the terms of the Certificate are in conflict with the provisions of the master policy a problem arises as to which should prevail. While the authorities are divided on the question, we believe the better view to be the one which holds that under group life insurance policies there is a contract between the insurer and the individual insured, that the contract consists of both the master policy and the certificate of insurance construed together, and that ambiguities or conflicts between the two must be resolved so as to provide the broadest coverage. See, Prudential Insurance Company of America v. Roberts, 5 Cir. 1966, 358 F.2d 394; DaCosta v. General Guaranty Insurance Company of Florida, Fla. 1969, 226 So.2d 104; Moore v. Peninsular Life Insurance Company, Fla.App. 1968, 213 So.2d 721; and 1 Appleman, Insurance Law & Practice, § 46. Id at 748.
We find an obvious ambiguity and conflict here as the individual certificate issued and the master policy are irreconcilable. Had the insurance company uncovered the unacceptable second issue before the death of the insured and then refunded the premiums, we might be otherwise disposed, but to permit such now would be unconscionable and the insurance company is estopped by its own conduct or that of its issuing agent.
It is urged by the insurance company that this case involves a question of how much coverage was available rather than a total forfeiture. Upon such a premise it cites Six L's Packing Company, Inc. v. Florida Farm Bureau Mutual Insurance Co., 268 So.2d 560 (Fla. 4th DCA 1972), aff'd. 276 So.2d 37 (Fla. 1973). We do not agree. In Six L's, a single policy was involved and the agreement *797 centered on a failure by the insured to carry out affirmative monthly obligations, of which he had actual notice, under the policy, thereby reducing the available coverage on the contents of a packing shed. In a well reasoned opinion, the Six L's court identified the issue, as follows:
The general rule is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer (or his agent) is not applicable to matters of coverage as distinguished from grounds for forfeiture. 18 Fla.Jur. Insurance § 677, and 43 Am.Jur.2d Insurance § 1184. State Liquor Stores, # 1 v. United States Fire Ins. Co., Fla.App. 1971, 243 So.2d 228; Johnson v. Dawson, Fla.App. 1972, 257 So.2d 282. See also Alaska Foods, Inc. v. American Mfr's Mut. Ins. Co., Alaska 1971, 482 P.2d 842; Commonwealth Ins. Co. of New York v. O. Henry Tent & Awn. Co., 7 Cir.1961, 287 F.2d 316. In other words, while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel.
We are therefore faced with the threshold determination of whether the pertinent clauses go to the coverage of the policy as distinguished from furnishing a ground for forfeiture. Id at 563.
In the case now before us, by contrast, there were no unfulfilled obligations by the insured and he was in full compliance with the terms of a certificate which the insurance company now reports should never have been issued. It is clear that this second distinct certificate of life insurance was, in fact, forfeited rather than reduced in coverage.
The same problem, as is presented here, arose in a similar case decided in California in which credit life insurance was taken out following the purchase of three parcels of land. Evans v. Holly Corporation, 15 Cal. App.3d 1020, 93 Cal. Rptr. 712 (Ct. of App. 2nd Dist. 1971). The certificates involved there stated that "`in no event shall the aggregate amount of all such insurance on the life of any Debtor exceed' the amount of $7500." Id. at 713. After noting that the insured had probably never seen the master policy, the court ruled that:
Where the representations in an insurance certificate indicate broader coverage than that provided by the master policy, the insurer is bound by the terms of the certificate (Humphrey v. Equitable Life Assur. Soc., 67 Cal.2d 527, 534, 63 Cal. Rptr. 50, 432 P.2d 746). Reasonably construed, the certificates each evidenced coverage to a maximum of $7500 for each separate purchase. This was strongly implied by the issuance of three separate certificates with three separate account numbers and three separate listings of the initial amounts of insurance afforded, none of which exceeded $7500 separately but which totalled $17,680. Id. at 713.
In the case now before us, the insurance company argues that each of the two insurance certificates given to the deceased, specified that they were "under and subject to the terms and conditions of the creditors group policy" and that "the amount of insurance may not at any time exceed $35,000." The fallacy in this argument is that if it is controlling, we are led to the inescapable conclusion that the second certificate of insurance could never be issued in the first place  but it was issued, and the insured can hardly be blamed for assuming that the $35,000 limit would apply to each certificate. Nor can the insured be said to be bound by conditions set forth in a group policy which would cancel out the very insurance which had been solicited from him and for which he had paid. Such a contradiction in terms cannot be blamed on the insured who might well have procured credit life from another company had he been informed of the true state of affairs.
The insurance company also complains that it should not be required to give out the master policy where group insurance is involved under Florida Statutes § 627.565 (1975), and that if the plaintiff is allowed to avail itself of the theory of estoppel, the result would require the issuance of a copy of the master policy to *798 each individual insured. We will comment on that assertion only to say that, whether or not copies of the master plan are distributed, it is an unacceptable paradox to issue an insurance certificate on the one hand and simultaneously distribute a master document which cancels it on the other, although the insured continues to be asked to pay the premiums on said cancelled certificate.
Reversed and remanded to the trial court with directions to vacate the final judgment of July 6, 1976 and enter an order granting the plaintiff's motion for summary judgment, and assess appropriate costs and interests against the appellee/defendant.