**Norma R. DAVIS and Grover C. Davis, her husband, Plaintiffs-Appellants,**

v.

**CROWN LIFE INSURANCE COMPANY, a foreign corporation, Defendant-Appellee.**

No. 81–5821.

United States Court of Appeals, Eleventh Circuit.

Feb. 4, 1983.

---

R. Fred Lewis, Magill, Reid, Kuvin & Lewis, Miami, Fla., for plaintiffs-appellants.

Edmund T. Henry, III, Shutts & Bowen, Miami, Fla., for defendant-appellee.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

HATCHETT, Circuit Judge: .

Our issue is whether, under Florida law, the failure to recite in the certificate of insurance (which is available to the insured), a controlling provision recited in the master policy (which is not available to the insured) creates an "ambiguity" that must be resolved in the manner that provides the broadest coverage. Holding that an ambiguity is created, we reverse and remand the case to the trial court.

## BACKGROUND

Norma Davis, a new employee of Farm Stores, Inc. (Farm Stores), submitted an enrollment card for group insurance coverage in June, 1979. Crown Life Insurance Company (Crown Life) issued a group insurance policy to policyholder Farm Stores. Norma Davis requested coverage for herself and dependent coverage for her husband, Grover Davis. In completing the forms, she provided all the required and requested information pertinent to dependent coverage for her husband. Grover Davis was at that time, and had been for some time, totally disabled. Farm Stores, as policyholder for Crown Life, deducted money from Norma Davis's paycheck for dependent coverage of her husband.

Norma Davis received a certificate of insurance from her employer, as policyholder of Crown Life. The certificate of insurance listed Grover Davis's name as beneficiary, but also indicated that deductions were being made from Norma Davis's paycheck for dependent coverage for Grover Davis. Norma Davis believed that Crown Life had approved coverage for her husband.

In October, 1979, Grover Davis was involved in a catastrophic boating accident. He fractured his hip, leg and pelvis, and dislocated his knee. The necessary claim forms were submitted to Crown Life for payment of the medical and hospital expenses. Crown Life refused to honor Grover Davis's claim for insurance benefits, relying upon a clause in the master policy. Norma Davis had never seen the master policy.

The master policy, which was never delivered to Norma and Grover Davis, contained the following language intended to control the effective date of dependent coverage:

[W]ith respect to insurance under the MAJOR MEDICAL EXPENSE BENEFIT if included in this policy insurance for a dependent (other than a new born child) who is disabled on the date he otherwise would become insured shall not become effective until the earlier of

the date immediately following his subsequent completion of a period of thirty one consecutive days during which he was not disabled, or

the date evidence of his insurability is approved by Crown Life.

Relying upon the master policy language, Crown Life refused to honor Grover Davis's claim, stating that he was disabled on the date he otherwise would have become insured. Therefore, he never completed a thirty-one consecutive day period in which he was not disabled, and his insurability had never been approved by Crown Life. Further, since Grover Davis was named on the certificate only as a beneficiary of Norma Davis's policy, and not as the insured, Crown Life stated that Norma Davis's certificate of insurance did not constitute approval of Grover Davis's insurability.

Norma and Grover Davis argue that this master policy provision, which operates to preclude him from dependent coverage, was not included in the certificate of insurance, and that Crown Life has accepted premiums for Grover Davis's dependent coverage. Crown Life counters their argument by speculating that the Davises should have

known of the preclusive provision because an employee health care booklet delivered to Norma Davis which explained the insurance policy indicated that a disabled dependent could not receive insurance until either thirty-one consecutive days in which he was not disabled, or he had been approved by Crown Life as insurable.

The Davises began litigation in the Fifteenth Judicial Circuit of Palm Beach County, Florida, against insurer Crown Life. Interrogatories sufficient to ascertain diversity jurisdiction were propounded, and upon their being answered, the matter was removed to the district court. The district court granted Crown Life's motion for summary judgment.

The Davises argue on appeal that Florida law requires that insurance documents be construed broadly in favor of the insured and in a manner which affords the broadest possible protection. The insurance company issued a lengthy certificate of insurance describing the benefits provided without mentioning the preclusive provision in the master policy. The Davises argue that the insurance company cannot now attempt to repudiate that certificate of insurance by basing its obligations upon the fine print of a master policy which had not been delivered to the insured. Because these are issues of material fact, Norma and Grover Davis argue that the summary judgment of the district court was erroneously granted, and urge that it be reversed.

Crown Life argues on appeal that the insurance contract is not ambiguous. Crown Life contends that the master policy states that a disabled dependent such as Grover Davis may not be covered as a dependent, and that the Davises had notice of this fact through the issuance of an employee's health care booklet containing this information.

## DISCUSSION

In reviewing an order of summary judgment by the district court, we note that summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment is erroneously granted whenever it can be shown either that there exists an unresolved issue of fact, or that the party receiving summary judgment is not entitled to judgment as a matter of law.

■ Under Florida law, an insurance contract consists of the master policy and the certificate of insurance, and ambiguities between the two are to be construed as including, rather than precluding, coverage. *Rucks v. Old Republic Life Ins. Co.,* 345 So.2d 795, 796 (Fla.App.1977). A Florida court recently held:

> As a practical matter, the certificate is the only document which the insured under a group life insurance policy ever sees. When the terms of the Certificate are in conflict with the provisions of the master policy a problem arises as to which should prevail. While the authorities are divided on the question, we believe the better view to be the one which holds that under group life insurance policies there is a contract between the insurer and the individual insured, *that the contract consists of both the master policy and the certificate of insurance construed together, and that ambiguities or conflicts between the two must be resolved so as to provide the broadest coverage.*

*Rucks,* 345 So.2d at 796 (emphasis added).

In *Rucks,* the plaintiff and her husband obtained two bank loans, securing the loans in part with two different certificates of insurance to a credit life insurance policy. Each certificate of insurance provided that the amount of insurance could not exceed $35,000 and that the certificate was issued subject to the terms of the master policy. The plaintiff and her husband believed that they were covered for a maximum amount of $70,000. The master policy, however, provided that the total aggregate amount of insurance could not exceed in any case

$35,000. The plaintiff and her husband never received a copy of the master policy and had no idea that the amount of their coverage was only $35,000. They continued to pay premiums on the second certificate of insurance. Because the insurance certificate provided that the insurance amount could not at any time exceed $35,000, and because the master group policy provided that $35,000 was the maximum aggregate coverage amount, the state court held that there was a conflict between the master policy and the certificate of insurance. Therefore, the certificate was ambiguous. Applying the above cited language, the state court construed the ambiguity as to provide the greatest possible coverage, and therefore found the plaintiff to be covered.

*Rucks* involves discrepancies in credit life insurance, but the Florida state court directly addressed the issue of discrepancies between master policies and certificates of insurance in the group life insurance context. In *Equitable Life Insurance Society of the United States v. Wagoner*, 269 So.2d 747 (Fla.App.1972), a typographical error resulted in two different dates for beginning coverage appearing on the face of the certificate of insurance, and the master policy. The court resolved the conflict in favor of the insured, noting (1) that the life insurance contract consisted of the master policy and certificate of insurance, and (2) that any conflicts or ambiguity between the two must be resolved so as to provide the broadest coverage for the insured. *Wagoner*, 269 So.2d at 748.

Norma Davis did not see the master policy,[1] nor was she ever in a position to do so. She did see the certificate of insurance, however, and the certificate did not indicate that Grover Davis was precluded from coverage.

 If the certificate of insurance had contained a provision regarding the effec-

tive date of dependent disability coverage different from that in the master policy, *Wagoner* would require that the ambiguity be resolved to provide the broadest coverage for the insured. We are therefore faced with the question of whether an ambiguity is created when a controlling feature of coverage in the master policy is not recited in the certificate of insurance. The failure to state a controlling provision in a certificate of insurance is equally as egregious as stating conflicting dates in the master policy and the certificate of insurance. Where the certificate of insurance is silent on a controlling provision, the certificate does not merely mislead and confuse; it does not inform at all. Thus, the insured is never alerted to the omitted subject matter. Following *Wagoner*, we treat this ambiguity resulting from silence in the certificate of insurance the same as an express ambiguity between policy and certificate. In this case, the certificate indicated that dependent coverage deductions were to be made from Norma Davis's weekly salary, thereby giving the impression that Grover Davis was covered as a dependent. We hold that the failure to include the controlling provision regarding dependent disability coverage in the certificate of insurance, combined with the deductions for what reasonably appeared to be dependent disability coverage, created an ambiguity which must be resolved in the manner that provides the broadest coverage. To hold otherwise would encourage insurers to withhold the master policy and include few important provisions in the certificate of insurance.

The trial court granted summary judgment as a matter of law believing that it was irrelevant that the certificate of insurance did not recite this controlling provision of the master policy. Granting summary judgment as a matter of law, in light of *Wagoner*, was error.[2]

---

1. Issuance of the certificate of insurance rather than the full policy is for the convenience of the insurer. The insurer can prevent the problem presented here by either distributing the master policy, which would be burdensome, or by including in the certificate of insurance all essential provisions of the contract.

2. We do not suggest in this opinion that the district court is limited in considering evidence on remand, including the booklet allegedly furnished the insured.

## CONCLUSION

The district court's grant of summary judgment is reversed, and the case is remanded for further proceedings.

REVERSED and REMANDED