**STATE CONTRACTING & ENGINEER-ING CORPORATION and State Paving Corporation, Plaintiffs–Appellants,**

v.

**State of FLORIDA, Florida Department of Transportation, Recchi America, Inc., The Murphy Construction Company, The Hardaway Company, Hubbard Construction Company, Balfour Beatty Construction, Inc., Community Asphalt Corporation, and Joelson Concrete Pipe Company, Inc., Defendants–Appellees.**

No. 00–1434.

United States Court of Appeals, Federal Circuit.

July 20, 2001.

Rehearing and Rehearing En Banc Denied Sept. 6, 2001.

Richard S. Ross, of Ft. Lauderdale, FL, argued for plaintiffs-appellants.

Stefan V. Stein, Holland & Knight LLP, of Tampa, FL, argued for defendants-appellees. Of counsel was Harvey S. Kauget.

Before RADER, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

State Contracting & Engineering Corporation ("State Contracting") and State Paving Corporation ("State Paving") (collectively "plaintiffs") appeal the decision of the United States District Court for the Southern District of Florida granting summary judgment in favor of the defendants. *State Contracting & Eng'g Corp. v. Florida*, No. 97–7014–CIV–DIMITROULEAS (S.D.Fla. Mar. 2, 2000) (*"Final Order"*). We affirm the district court's grant of summary judgment to the State of Florida as to the patent infringement and Lanham Act claims (counts I, II, IV) on grounds of sovereign immunity. We also affirm the district court's grant of summary judgment to the State of Florida as to the takings claim (count V) and the breach of contract claim (count VI). However, we hold that the district court erred in granting summary judgment to the private contractors on the patent infringement claims (counts III and VII), and therefore we vacate and remand as to these claims. Accordingly, we affirm in part, vacate in part, and remand.

## BACKGROUND

In 1989, State Paving Corporation, a highway construction company, successfully bid on a State of Florida Department of Transportation ("FDOT" or "State of Florida") project for construction of sound barrier walls. The original agreement was reduced to writing and expressly incorporated the FDOT Standard Specifications for Road and Bridge Construction ("Standard Specifications"). During the course of the construction, State Paving submitted a Value Engineering Change Proposal ("VECP") proposing to use a new design for sound walls that would reduce costs. The new sound wall design described in the VECP allegedly included the use of a post (column) positioned in a cement-filled pile using a new method devised by State

Paving which was particularly suitable for use in sandy soil. FDOT accepted the VECP on July 5, 1990, agreeing to change the specifications of the contract to include the use of the sound wall design described in the VECP. The "Supplemental Agreement" signed by the parties stated that the contract adjustment and sum agreed to "constitutes a full and complete settlement" and that State Paving "accepts the terms of this Supplemental Agreement as full compensation for all costs of equipment, manpower, materials, overhead, profit and delay damages and for all their costs, whether direct or indirect, or whether incurred now or in the future, related to the issues set forth in this Agreement." Pursuant to the contract and "Supplemental Agreement," the State of Florida paid State Paving fifty percent of the cost savings realized by the VECP.

On June 29, 1990, State Paving filed a patent application with the United States Patent and Trademark Office for a structure and method using the technology described in the VECP. The application matured into two U.S. patents: (1) Patent No. 5,234,288 (the "'288 patent"), issued on August 10, 1993, directed to an improved method of forming a post by inserting the post into a cement slurry pile which is particularly suitable for use in building structures in sandy soil; and (2) Patent No. 5,429,455 (the "'455 patent"), issued on July 4, 1995, directed to the structure of the post and cement pile.[1]

FDOT began using data from the VECP in subsequent requests for bids. State Paving learned about one of these instances in September 1992 and sent a letter to potential bidders, advising them of the pending patent application and seeking a patent royalty. State Paving also sought additional payments under the contract for its use of the VECP data in other contracts to which State Paving was not a party.

The issues were not resolved by negotiation, and in August 1997 State Paving and State Contracting (collectively "State Contracting" or "plaintiffs") brought the present lawsuit against the State of Florida and seven private contractors in the United States District Court for the Southern District of Florida.

The plaintiffs filed a seven-count amended complaint on June 5, 1998, asserting the following claims: (1) direct patent infringement by the State of Florida of the '288 patent directed to the method of forming the improved post and cement pile (count I); (2) direct patent infringement by the State of Florida of the '455 patent directed to the structure of the improved post and cement pile (count II); (3) direct patent infringement by private highway construction contractors which worked for the State of Florida for infringement of both patents (count III); (4) violations of the Lanham Act by the State of Florida for its representation to potential bidders of construction projects that the specified method for sandy soil construction was "unpatented" (count IV); (5) unconstitutional taking by the State of Florida of plaintiffs' proprietary and patent rights in designs and specifications for the construction of sound barrier walls (count V); (6) breach of contract by the State of Florida for failure to compensate plaintiffs under the contract for use of plaintiff's proprietary technology on sound barrier construction projects after the original contract with plaintiffs (count VI); and (7) contributory patent infringement by Joelson Concrete Pipe Company based on its manufac-

---

1. State Paving assigned its rights under the patents to State Contracting.

ture, use and sale of posts specially made as a component of the patented apparatus and method (count VII).

On June 22, 1998, the defendants answered the amended complaint as to all counts except for the Lanham Act claims, which the State of Florida moved to dismiss on grounds of sovereign immunity. In the answer, the defendants counterclaimed for a declaratory judgment of non-infringement and invalidity of the '288 and '455 patents. The district court denied the State of Florida's motion to dismiss the Lanham Act count. That decision was appealed to this court. We remanded the case to the district court to "consider all issues that may be before the court in the first instance" in light of the Supreme Court's decisions in *Florida Prepaid Post-secondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999), and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).[2] *State Contracting & Eng'g Corp. v. Florida,* No. 99–1236, 1999 WL 717798 (Fed.Cir. Sept.2, 1999) (nonprecedential order).

On remand, the parties filed cross motions for summary judgment. In the final order of March 2, 2000, the district court dismissed counts I, II, and IV (which stated claims against the State of Florida for patent infringement and violation of the Lanham Act) on grounds of sovereign immunity. The court also granted summary judgment to the State of Florida on count V—the takings claims. The court granted summary judgment on count VI (seeking recovery against the State of Florida un-

der the contract) against State Contracting on the ground that the contract had not been breached. Finally, the court granted summary judgment on counts III and VII (patent infringement) to the private contractors on the ground that the contract with the State created a license to practice the patent. The court failed to expressly address the defendants' counterclaims for a declaratory judgment of non-infringement and invalidity of the '288 and '455 patents in the March 2, 2000, final order. State Contracting appealed to this court.

## DISCUSSION

### I. *Standard of Review*

 We follow the regional circuit's standard of review regarding issues not pertaining to patent law. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 148 F.3d 1343, 1346, 47 USPQ2d 1161, 1163 (Fed.Cir.1998), *rev'd on other grounds,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Molins PLC v. Quigg,* 837 F.2d 1064, 1066, 5 USPQ2d 1526, 1527 (Fed.Cir.1988). Under the law of the Eleventh Circuit, we review without deference a district court's ruling on the issue of sovereign immunity to suit. *Fla. Paraplegic Assoc., Inc. v. Miccosukee Tribe of Indians of Fla.,* 166 F.3d 1126, 1128 (11th Cir.1999); *Tinney v. Shores,* 77 F.3d 378, 383 (11th Cir.1996). We review a district court's grant of summary judgment without deference. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998).

### II. *Jurisdiction/Finality of Judgment*

Before addressing the merits, we are obligated to consider the issue of our juris-

---

**2.** Both cases involved a private party, College Savings Bank, and a state agency, Florida Prepaid Postsecondary Education Expense Board. The cases involve somewhat similar facts and were issued on the same day by the Supreme Court.

diction. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself … of its own jurisdiction.") (internal quotations and citations omitted); *see also Helfgott & Karas, P.C. v. Dickenson,* 209 F.3d 1328, 1333, 54 USPQ2d 1425, 1428 (Fed.Cir.2000). At the time the plaintiffs appealed to this Court, there remained pending in the district court the counterclaims directed toward non-infringement and patent invalidity. Since it appeared that there might be no appealable final judgment and no certification pursuant to Fed.R.Civ.P. 54(b), on June 7, 2001, we issued an order directing the parties to address the jurisdictional issue. The parties agreed that the judgment of the district court was not final because of the pending counterclaims and that no Rule 54(b) certification had been entered, but filed in the district court an "Emergency Motion/Request for Certification of Final Order of Summary Judgment for Defendants Pursuant to Rule 54(b)."

On June 20, 2001, the district court issued an order granting plaintiffs' request for a certification of final judgment, *State Contracting & Engineering Corp. v. Florida,* No. 97–7014–CIV–DIMITROULEAS (S.D. Fla. June 20, 2001) (Order Amending Order of March 2, 2000 and Granting Motion For Certification), stating that "there is no just reason for delay of the appeal of the March 2, 2000 Order," *id.,* slip op. at 2, and that "the Court intended the March 2, 2000 Order to be final as to all of Plaintiffs' claims." *Id.* The district court also amended the March 2, 2000, order "to add numbered paragraph 12 on page 14, stating: 'Defendants' counterclaims in this case are hereby DISMISSED as moot, without prejudice, and may be reinstated in the event the Federal Circuit Court of Appeals

reverses or remands this case back to this Court." *Id.* at 2–3. By separate order also dated June 20, 2001, the district court ordered that "summary final judgment is hereby entered, *nunc pro tunc* to March 2, 2000, on behalf of all Defendants as to all counts of Plaintiffs' amended complaint, and against the Plaintiffs, and Plaintiffs shall take nothing by this action." *State Contracting & Eng'g Corp. v. Florida,* No. 97–7014–CIV–DIMITROULEAS (S.D. Fla. June 20, 2001) (Final Summary Judgment).

 Under these circumstances we conclude that we have jurisdiction because the district court's order constitutes a final judgment under Rule 54(b). *See* 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2660 (3d ed.1998). We have established that in matters of our own jurisdiction, regional circuit law is not binding, and we are obligated to make an independent determination of our jurisdiction. *Woodard v. Sage Prods., Inc.,* 818 F.2d 841, 844, 2 USPQ2d 1649, 1651 (Fed.Cir.1987) (noting that "deference [to regional circuit law] is inappropriate on issues of our own appellate jurisdiction," and that "our decision to follow another circuit's interpretation of a common jurisdictional statute results from the persuasiveness of its analysis, not any binding effect"); *see also Slip Track Sys., Inc. v. Metal Lite, Inc.,* 159 F.3d 1337, 1339, 48 USPQ2d 1055, 1056 (Fed.Cir. 1998); *Enercon Indus. Corp. v. Pillar Corp.,* 105 F.3d 1437, 1439 n. 2, 41 USPQ2d 1630, 1631 n. 2 (Fed.Cir.1997). We have specifically held that Federal Circuit law applies to Rule 54(b) certification and appellate jurisdiction issues. *Enercon Indus.,* 105 F.3d at 1439 n. 2, 41 USPQ2d at 1631 n. 2; *Spraytex, Inc., v. DJS&T,* 96 F.3d 1377, 1379, 40 USPQ2d 1145, 1146

(Fed.Cir.1996). We elect to follow the majority of other circuits and hold that a premature notice of appeal ripens upon entry of a proper Rule 54(b) certification. *See, e.g., Clausen v. Sea–3,* 21 F.3d 1181, 1184 (1st Cir.1994) ("The majority of circuits that have addressed jurisdictional quagmires similar to this one have held that a belated Fed.R.Civ.P. 54(b) certification ripens a premature notice of appeal as of the date of the certification."); *Good v. Ohio Edison Co.,* 104 F.3d 93, 95 (6th Cir.1997) (stating that its holding that "a premature notice of appeal ripens upon the entry of a proper Rule 54(b) certification, regardless of whether the certification is entered *nunc pro tunc....* is consistent with a majority of our sister circuits that have addressed this issue"). *But see Useden v. Acker,* 947 F.2d 1563, 1570 (11th Cir.1991), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). We follow the majority view and hold that the June 20, 2001, Rule 54(b) certification relates back to the March 2, 2000, final order, and that we have appellate jurisdiction.

### III. *Sovereign Immunity*

#### A. *Patent Infringement and Lanham Act Claims (Counts I, II, and IV)*

On the issue of sovereign immunity, this case is governed by *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999), and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). In those cases, the Supreme Court established the Eleventh Amendment immunity of states from, respectively, patent infringement suits under the patent statute and unfair competition suits

under the Lanham Act. In *Florida Prepaid,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575, the Supreme Court held that although Congressional intent to abrogate states' immunity for patent infringement claims was unmistakably clear in the language of the Patent and Plant Variety Protection Remedy Clarification Act (Patent Remedy Act), the Commerce Clause, the Patent Clause, and the 14th Amendment did not provide Congress with authority to abrogate state sovereign immunity with respect to patent infringement claims. *Id.* at 636–48, 119 S.Ct. 2199. Accordingly, the Supreme Court reversed this court's decision in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 148 F.3d 1343 (Fed.Cir.1998), which had sustained the abrogation of immunity. 527 U.S. at 648, 119 S.Ct. 2199. In the companion case at the Supreme Court, *College Savings Bank,* 527 U.S. 666, 672–75, 119 S.Ct. 2219, 144 L.Ed.2d 605, the Court held that the Trademark Remedy Clarification Act did not abrogate sovereign immunity for actions brought under the Lanham Act. The Court also held that Florida did not voluntarily waive its sovereign immunity through its activities in interstate commerce and expressly overruled the Court's previous decision in *Parden v. Terminal Railway of Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), which had recognized an implied or constructive waiver of sovereign immunity. 527 U.S. at 675–87, 119 S.Ct. 2219. The Supreme Court affirmed the Third Circuit decision in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 131 F.3d 353, 366 (3d Cir.1997). 527 U.S. at 691, 119 S.Ct. 2219.

■ Under the Court's decisions in *College Savings Bank* and *Florida Prepaid,*

Florida enjoys sovereign immunity with respect to the patent infringement and Lanham Act claims unless Florida has waived sovereign immunity. The district court rejected State Contracting's assertion that Florida has waived its immunity either generally or specifically by participating in the litigation. On this appeal, plaintiffs contest the district court's waiver decision.

■ We are not persuaded that Florida has generally waived its immunity to suit. The Florida Supreme Court's 1941 decision in *State Road Department of Florida v. Tharp*, 146 Fla. 745, 1 So.2d 868 (1941), held merely that a bill of complaint for an injunction against the State of Florida in state court on a theory of trespass could be maintained because the state had waived immunity by state statute and by the Florida Constitution. The case may also represent a holding that sovereign immunity is waived as to takings claims in state court. The question, however, remains whether Florida has waived sovereign immunity in this particular case as to the patent and Lanham Act claims in the federal district court. It is well-established that an express waiver of sovereign immunity must be unequivocal. *Coll. Sav. Bank*, 527 U.S. at 680, 119 S.Ct. 2219; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). After *College Savings Bank*, it is clear that any waiver of sovereign immunity by a state must be express and voluntary, and cannot be implied or constructive. 527 U.S. at 682, 119 S.Ct. 2219 (expressly overruling *Parden* ). The Court also emphasized that the test for finding an express waiver is a stringent one. *Coll. Sav. Bank*, 527 U.S. at 682, 119

S.Ct. 2219. Under this standard we cannot find a general waiver of immunity with respect to Lanham Act and patent claims.

■ State Contracting also claims that Florida has waived its sovereign immunity by defending this litigation, both on its own behalf and as the representative of the alleged private infringers. It is quite clear that those activities do not amount to a waiver. In *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n. 18, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), for example, the Supreme Court held that "[t]he fact that the State appeared and offered defenses on the merits does not foreclose consideration of the Eleventh Amendment issue." *See also Allinder v. Ohio*, 808 F.2d 1180, 1184 (6th Cir.1987) (holding that the State of Ohio did not waive immunity by generally defending itself when it raised defenses in addition to sovereign immunity).

■ In its answer to the amended complaint, the State of Florida counterclaimed for a declaratory judgment of noninfringement and invalidity of the '288 and '455 patents. State Contracting next asserts that Florida has waived immunity as to the patent claims by filing the counterclaim and by litigating the counterclaim. The question whether the filing of a counterclaim constitutes a waiver of immunity as to the patent claims is substantial, for some courts have suggested that the filing of a counterclaim waives immunity, *see, e.g., Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Authority*, 744 F.2d 880, 886 (1st Cir.1984), *Newfield House, Inc. v. Massachusetts Department of Public Welfare*, 651 F.2d 32, 36 n. 3 (1st Cir.1981), and others have made clear that the filing of a patent counterclaim of invalidity is quite a separate matter from asserting

affirmative defenses of invalidity, *Cardinal Chem. Co. v.. Morton Int'l, Inc.,* 508 U.S. 83, 94, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (discussing differences between filing an answer asserting invalidity and filing a counterclaim for declaratory judgment of invalidity). In *College Savings Bank,* 131 F.3d 353, 366 (3d Cir.1997), *aff'd,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), the Third Circuit held that Florida's filing of a Lanham Act counterclaim did not waive its defense of sovereign immunity because it was not until the Supreme Court decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that "the successful assertion of an immunity defense became a reasonable possibility." In *Seminole Tribe,* the Supreme Court first held that Congress' authority to abrogate a state's Eleventh Amendment immunity from suit in federal court was confined to the enforcement section of the Fourteenth Amendment. We generally agree with the Third Circuit's approach, with two modifications. We think that the test should be one of "reasonable expectation" rather than "reasonable possibility," thus allowing some greater latitude for the filing of protective counterclaims by the states without waiving immunity, and we conclude that the decision in *Seminole Tribe* did not create a reasonable expectation that the state would prevail on its sovereign immunity claim with respect to the patent infringement counts.

In this case, the patent counterclaim was filed on June 22, 1998. At the time the counterclaim was filed Congress had abrogated the state's patent infringement immunity in the 1994 Patent Remedy Act, and we sustained the abrogation of immunity for patent infringement claims on June 30, 1998, in our *College Savings Bank* decision, 148 F.3d 1343 (Fed.Cir.1998), shortly after the counterclaim was filed. The State of Florida could not have reasonably expected to prevail on its sovereign immunity defense until *Florida Prepaid* was decided by the Supreme Court. Therefore, it was entirely reasonable for the State to file a counterclaim of patent invalidity.[3] In short, we agree that the filing of a counterclaim during a period when the State was reasonably unsure about the availability of an immunity defense was not a waiver. The parties agree that Florida took no further action on the counterclaims after the Supreme Court's decision in *Florida Prepaid.* We hold that Florida's mere failure to withdraw the counterclaims after the Supreme Court decision cannot be a waiver of sovereign immunity as to counts I, II, and IV.

### B. *Takings Claim (Count V)*

 In its complaint, plaintiffs alleged an unconstitutional taking by the State of Florida of their proprietary and patent rights in designs and specifications for the construction of sound barrier walls. The district court held that the takings claim was barred by sovereign immunity because "[a]llowing Plaintiffs' Count V to proceed would vitiate the Eleventh Amendment analysis in the Supreme Court's *College Savings Bank* opinions by turning every patent infringement case against a state into a Section 1983 takings case for patent profits." *Id.,* slip op. at 9. We affirm the holding of sovereign immunity, but on a

---

**3.** The district court noted that "the state of the law at the time Defendants filed their answer, counterclaim and motion to dismiss, was clear that a state *could be sued* for patent infringement under the Patent and Plant Protection Remedy Clarification Act as enacted by Congress." *Final Order,* slip op. at 6–7 (emphasis in original).

different ground. In *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court recognized that 42 U.S.C. § 1983 did not abrogate the states' sovereign immunity for suits in federal court. The Court noted that "[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States." *Id.* In light of *Quern,* we affirm the district court's grant of summary judgment in favor of the State of Florida on the takings claim.

### C. *Breach of Contract against the State of Florida (Count VI)*

The district court assumed that there was no sovereign immunity as to claims against the State of Florida for breach of contract, and the parties apparently agree, as do we. But the district court also correctly held that the contract claims against Florida were without merit. *Final Order,* slip op. at 9–12. Plaintiffs argue that the contract obligated FDOT to compensate plaintiffs for the cost savings in future contracts using the plaintiff's proprietary technology at the same rate as in the VECP contract. *Id.,* slip op. at 10.

The relevant portions of the contract on this issue are found in the FDOT Standard Specifications that are expressly incorporated into the contract. Section 4–3.5.7, entitled "Sharing Arrangements," states:

> If a VECP is accepted by the Department, the Contractor is entitled to share in instant contract savings.... For the purposes of sharing under this Subarticle, the term 'instant contract' ....

shall, however, include any extension of the instant contract through exercise of an option (if any) *provided under this Contract* after acceptance of the VECP.

. . .

> The Contractor shall not receive instant savings or collateral savings shares on optional work *listed in this Contract,* until the Department exercises its option to obtain that work.

(emphases added).

 We agree with the district court that this language is unambiguous, and that the obligation is limited to "optional work listed in this Contract" or work under "an option (if any) provided under this Contract." The work in question was not option work under the original contract. We agree with the district court that this language did not create an obligation to pay plaintiffs if FDOT used their data on future contracts as plaintiffs claim here. Contrary to appellants' arguments, *Dahl-Eimers v. Mutual of Omaha Life Insurance Co.,* 986 F.2d 1379, 1381 (11th Cir. 1993), and *Davis v. Crown Life Insurance Co.,* 696 F.2d 1343, 1346 (11th Cir .1983), do not establish that the absence of a provision for payment renders a contract ambiguous under Florida law.

### IV. *Claims Against Private Contractors for Patent Infringement (Counts III and VII)*

This leads us to the claims against the private parties. The district court reasoned that the patent infringement claims against the private contractors (counts III and VII) were barred because State Contracting had agreed to license the State of Florida under its patents. We conclude that the district court erred as to these claims.

The contract in question was drafted by the State of Florida, and was lengthy. It incorporated what are known as value engineering provisions—designed to encourage contractors to develop better methods of doing the job. As noted above, the contract provided for additional payments to the contractor if it developed such methods and allowed the state to use these methods on the contract and on option contracts free of charge.

■ The relevant portion of the contract, section 4–3.5.8 of the FDOT Standard Specifications, entitled "Department's Future Rights to a VECP," provided:

> In the event of acceptance of a VECP, the Contractor hereby grants to the Department *all rights to use, duplicate or disclose,* in whole or in part, in any manner and for any purpose whatsoever, and to have or to permit others to do so, *data* reasonably necessary to fully utilize such proposal *on this and any other Department contract.*

(emphases added). These provisions were not limited to the contract in question, but extended to all future State of Florida use. The district court found this language to be unambiguous and held that "Plaintiffs agreed in the VECP to allow FDOT to utilize their then unpatented data, without any agreement to compensate Plaintiffs for future use, beyond the instant contract savings and any optional work included in the original contract." *Final Order,* slip op. at 12–13. While we agree with the district court that this language is unambiguous, we disagree with the district court's interpretation of this language. We conclude that the contract does not provide a license for patent rights to the private contractors.

■ "Whether express or implied, a license is a contract 'governed by ordinary principles of state contract law.'" *McCoy v. Mitsuboshi Cutlery, Inc.,* 67 F.3d 917, 920 36 USPQ2d 1289, 1291 (Fed.Cir.1995) (quoting *Power Lift, Inc. v. Weatherford Nipple–Up Sys., Inc.,* 871 F.2d 1082, 1085, 10 USPQ2d 1464, 1466 (Fed.Cir.1989)). Although we apply Florida law in construing the contract, it is significant that the Supreme Court has recognized that patent rights and trade secret rights are quite distinct, and that a contract may provide for different treatment of the two. For example, in *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), the Supreme Court held that even though a patent application had not issued, the parties' agreement for the payment of a royalty for the use of proprietary technology was valid, because "[s]tate law is not displaced merely because the contract relates to intellectual property which may or may not be patentable." So too in *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 474, 491–93, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), the Supreme Court held that Ohio's law protecting trade secrets was not preempted by the federal patent laws because the trade secret law did not clash with the objectives of the federal patent law.

The right to use State Contracting's proprietary technology on the original contract was covered by the supplemental VECP agreement itself as discussed above. The only rights that the state acquired for future contracts were by virtue of section 4–3.5.8. To be sure, the provision apparently contemplated that State Contracting's "proposal" would be used on "other Department contract[s]." But that section only conveyed rights to use "data" in future contracts, and did not in terms convey the right to manufacture the sound barriers using plaintiffs' design or to use plaintiffs' manufacturing method. Most

significantly the section did not explicitly convey any patent rights, require the contractor to surrender its rights to the technology, or bar the contractor from securing a patent on the invention.

The contract's failure to explicitly provide for the licensing of patent rights is a glaring omission, particularly where, as here, the contracting parties clearly contemplated that there might be relevant patents. Section 7–3 of the FDOT Standard Specifications, entitled "Patented Devices, Materials and Processes," provides: "It is agreed that, without exception, contract prices are to include all royalties and costs arising from patents, trademarks, and copyrights, in any way involved in the work." The provision for licensing of patents is limited to work under the contract and does not convey any license to future use of the patented technology. The existence of this provision shows that, if the parties had intended to convey other patent rights, they would have done so explicitly.

Under these circumstances we think it clear that the contract did not in fact provide a license for patent rights to the private contractors under future contracts. The State of Florida drafted the contract, and Florida law requires that it be construed against the drafter. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 117 F.3d 1328 (11th Cir.1997). Therefore, we vacate the district court's grant of summary judgment to the private contractors on the patent infringement counts (counts III and VII), and remand for proceedings consistent with this opinion.

## CONCLUSION

Based on the above, we affirm in part, vacate in part, and remand. We hold that the district court did not err in granting summary judgment to the State of Florida on counts I, II, IV, V, and VI, but that the district court erred in granting summary judgment to the private contractors on counts III and VII.

*AFFIRMED–IN–PART, VACATED–IN–PART, and REMANDED.*

### COSTS

No costs.